LOCKHART v. LOCKHART.

## Opinion delivered April 5, 1920.

1.  DIVORCE — SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain the chancellor's finding that the husband was not guilty of cruel treatment, and that the wife was guilty of adultery.

2.  DIVORCE—SUFFICIENCY OF EVIDENCE.—Adultery may be proved by circumstances; but they must be such as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt.

3.  DIVORCE—DISPOSITION OF CHILD.—Where the court granted a divorce to a husband and awarded to him the custody of a seven-year old boy, whom the mother loved and always treated kindly and affectionately, it was error not to give her the right to visit him on all proper occasions.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; modified and remanded.

### STATEMENT OF FACTS.

This is an action for divorce by the wife against the husband on the statutory ground of cruel and barbarous treatment.

The husband answered and denied the allegations of the complaint. He filed a cross-complaint in which he asked for a divorce on the ground of adultery.

Nell Lockhart, the plaintiff, was a witness for herself. According to her testimony, her husband drew a gun on her three or four times and threatened to kill her. At one time he beat her up and knocked her down. At another time he beat her up and abused her to such an extent that she had to leave their home in the night time in her night clothes. Her husband was insanely jealous of her, and continually accused her of being intimate with other men. She always treated her husband kindly, and denied that she had ever had improper relations with any man. She was kind to their seven-year-old boy and loved him dearly.

Her mother was a witness for her, and according to her testimony, the husband was very jealous of his wife and continually nagged at her and used profane language to her and in her presence.

Another witness, who was a neighbor, corroborated the testimony of the plaintiff as to the ill-treatment to her of the defendant.

The defendant, Leland L. Lockhart, was a witness for himself. He denied that he had ever cursed, struck or abused his wife, and stated that he had always treated her kindly. He said that he dearly loved her yet, but would not live with her, and had filed a suit for divorce because she had confessed to him that she had been criminally intimate with Wallace Randall.

Mrs. T. M. Riley, a next door neighbor to the parties to this suit at McGehee, Arkansas, testified that one night while the husband, who was a railroad engineer, was absent all night on his run, she saw Wallace Randall enter their home about 10 o'clock and come out of it the next morning at about 3 o'clock.

Another neighbor testified that she had frequently seen Wallace Randall and Mrs. Lockhart at the picture show, and that on two occasions while there she heard them make a date to meet at 3 o'clock.

According to the testimony of Mrs. Nell White, she formerly lived across the street from the Lockharts in the town of McGehee and Otto Stecher boarded with her. At one time she saw Otto Stecher and Mrs. Lockhart talking together in the alley back of the latter's house. Later on Stecher married and his wife burned up a lot of his letters. One of them failed to burn and one of Mrs. White's little children picked up the envelope and letter in which it was contained and brought it to his mother. She kept the letter, which is as follows:

"Monday afternoon.

"No one cares any more. But I'll always have that old spot somewhere. I'm most powerful candy hungry.

"Dearest Otto: I certainly do admire you when it comes to keeping one's word. You sure are a good one. But little one, I don't suppose you'll see me any more after this week, as I'm going to L. R. to the hospital, while there to be operated on, and it matters not to me

what happens then only I hope the worst to come. But if such should be the case as I live, if you ever need a friend or pal old Nell is always ready to help or lift you as I'd go through hell for you and you know it. Would certainly loved to had just a few words with you before I go away, which may be forever, and I guess you wonder what for, but Leland knows there something but thinks its his, let him remain so as I'll never tell, and if I pass away don't you ever tell it, he's asleep now and rest is up at 7 and is first out, so guess he'll get right out and after you read this and would like to see me just one more time for a bit, well, dearie, come on down as you know you are always welcome around me to anything I have or can get for you. If possible ans. this, so I'll know whether to expect you or not. Once and for always good friend, Nelle. You had better think hard and come on.''

The letter is signed Nelle, but Mrs. White did not know in whose handwriting it was.

The defendant testified that the letter was in his wife's handwriting. She denied that the letter was in her handwriting, and stated that she did not write it.

Other testimony will be stated or referred to in the opinion.

The chancellor found the issues in favor of the defendant. It was decreed that the complaint of the plaintiff should be dismissed for want of equity; that the defendant should have a divorce on his cross-complaint and that he have the custody of their seven-year-old boy. The plaintiff has appealed.

*Gardner K. Oliphint,* for appellant.

1. The charge of adultery was not proved, and the appellant should have been granted a divorce, custody of the child and alimony, as prayed in her petition. 104 Ark. 381-5-6; 129 *Id.* 111; 31 Mich. 298; 104 Ark. 1-7; 32 *Id.* 337; 42 *Id.* 235. The decree for appellee is without any legal support in the evidence adduced. 124 Ark. 74; 105 *Id.* 194; 114 *Id.* 516; 93 *Id.* 426; 82 *Id.* 547; 44 *Id.*

431; 134 S. W. 963-7. Appellee was not entitled to a divorce under section 2672, Kirby's Digest, as the evidence fails to measure up to the standard required by law. 9 Ark. 507; 114 *Id.* 516; 104 *Id.* 385.

2. The evidence fully entitled appellant to a divorce and fails to show that appellee was so entitled. 85 Ark. 472; Kirby's Digest, § 2677; 54 *Id.* 20; 53 S. E. 630; 4 L. R. A. (N. S.) 1185; 30 Am. Dec. 538; 2 Wigmore on Ev., § 1013, p. 1174; 34 Ark. 37-41.

3. The decree is erroneous and should be reversed with directions to grant appellant a divorce and custody of the child and alimony. 77 Wash. 205; 75 *Id.* 22; 124 *Id.* 584; 73 *Id.* 194; 135 *Id.* 484; 125 *Id.* 77-81; 122 *Id.* 278; 53 S. E. 630; 4 L. R. A. (N. S.) 1190; 97 Ark. 128; 54 *Id.* 20; 125 *Id.* 33; 100 *Id.* 71. See also Kirby's Digest, § 2677; 14 Ark. 278; 16 *Id.* 527; 18 *Id.* 399; 194 Pa. St. 287; 75 Am. St. 699; 18 Nev. 49; 131 N. W. 460; Ann. Cas., 1913 B, 1; 21 Am. St. 283; 14 Cyc. 606; 38 Ark. 119. The hearsay evidence introduced was not competent. 93 Ark. 126; 105 *Id.* 194; 51 L. R. A. (N. S.) 282.

*Robert L. Rogers,* for appellee.

The case is heard here *de novo.* The evidence conclusively shows that the findings of the chancellor are correct. Adultery of the wife was proved. 101 Ark. 528; 14 Cyc. 693-6. The findings of the chancellor are at least *very persuasive* and they should be sustained. 97 Ark. 537, 568.

HART, J. (after stating the facts). It would serve no useful purpose to state in detail the testimony relative to the statutory charge of the plaintiff that the defendant offered such indignities to her person as to render her condition in life intolerable, or that he was guilty of such cruel and barbarous treatment as to endanger her life. Her own testimony and that of her mother, standing alone, might warrant a decree of divorce in her favor; but their testimony is flatly contradicted by that of the husband and he is corroborated by their neighbors. It does ap-

pear that the husband was insanely jealous of his wife, but it is also evident that he had good grounds therefor. Divorce is a remedy provided for an innocent party, and it may be said, in this connection, that the husband was not guilty of the statutory grounds alleged against him. Therefore, he is entitled to a divorce if the evidence establishes adultery on the part of the wife. We do not deem it necessary to discuss the testimony on this phase of the case at length. The letter to Stecher speaks for itself, and from it the chancellor might have inferred that the party writing it was unduly intimate with Stecher and had been guilty of adultery with him. The party writing the letter confesses her love for Stecher and that she had been deceiving her husband. She begged Stecher to come to her when her husband was absent and writes in such a way that the chancellor might have found that she had been guilty of adultery with Stecher. It is true that the plaintiff denied in positive terms that she had written this letter, or that she had been guilty of adultery with Stecher, or with Randall. The husband, however, testified that the letter was in his wife's handwriting. The original letter was before the chancellor, and with it for the purpose of comparing the handwriting was an admittedly genuine letter written by the plaintiff. We have the original of these letters before us and have the same opportunity to make a comparison of the handwriting as did the chancellor. Hence we can not say that the finding of the chancellor that the plaintiff wrote the letter was against the preponderance of the evidence. This is especially true when we consider that it was shown that Wallace Randall, another admirer of the plaintiff, was seen to enter her house at 10 o'clock in the evening and leave there at 3 the next morning, and this at a time when the husband was absent from home. It is true this witness who was a next door neighbor was not on good terms with the plaintiff, but this fact may be the reason why she watched for the egress of Randall after she had seen him enter the house in the absence of the husband so late in the evening.

It was shown by another neighbor that the plaintiff made a date with Randall at the picture show on two occasions for 3 o'clock. It does not appear whether this was day or night time. There is a good deal of testimony in the record which we have not abstracted because it amounted to no more than suspicious conduct on the part of the plaintiff. There is evidence in the record, however, to show that she kept company with Randall during her husband's absence.

Adultery may be proved by circumstances. The circumstances, however, must be such as "to lead the guarded discretion of a reasonable and just man to the conclusion of guilt." The conduct of the plaintiff when considered in connection with the letter written by her to Stecher gives character to her relations with him, and, after a careful reading and consideration of the whole record, we can not say that the finding of the chancellor that the plaintiff was guilty of adultery is not sustained by a preponderance of the evidence. Therefore, the decree of the chancellor granting the defendant a divorce must be affirmed.

The court awarded the custody of Leland Lockhart, Jr., to the husband and made no provision for the wife to visit him. The record shows that she loved her little son and had always treated him kindly and affectionately. It was error for the chancellor not to give her the right to visit her son on all proper occasions, and for that error the decree in this respect will be reversed with directions to the chancellor to provide for visitation by the wife to their little son on all proper occasions.

In other respects the decree will be affirmed.