Larry Sid LUMPKIN *v.* Linda
(Lumpkin) GREGORY

77-106                                                559 S.W. 2d 151

Opinion delivered December 19, 1977
(In Banc)

*Napper, Hardin & Wood,* by: *G. Steven Napper,* for appellant.

*Daggett, Daggett & Van Dover,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Larry Sid Lumpkin, seeks to have visitation rights spelled out as to Larry Sid Lumpkin, Jr., his son by appellee Linda Lumpkin Gregory, the now divorced wife of appellant. Appellant contends such rights have been unduly denied him in the past by appellee, but the chancellor found otherwise, and denied relief. From such order comes this appeal.

On April 10, 1973, appellant and appellee were divorc-

ed, with appellee retaining custody of the child, Larry Sid Lumpkin, Jr., (then age 5), subject to reasonable visitation privileges. The decree likewise provided for reasonable support payments each month.

Testimony on the part of appellee was to the effect that appellant has never made any payments of support for his son other than on one occasion paying the tuition for a private school in the amount of $200. She stated that her ex-husband would get the child, keep him for three weeks and then refuse to bring him home; that when she would go to get him, Lumpkin would "slap me around the yard" and several days later he would return the boy to her home; that the length of time he would keep him was very much against her wishes.

She mentioned an incident involving her youngest sister:

"Well, for one thing he had a habit of indecent exposure, and one of these particular instances I witnessed myself. My youngest sister was in the bedroom, sitting on Sid's bed talking to Sid, and I went back there to say something to her — and I noticed that she looked kind of funny and was holding her head down looking at the floor, and when I looked up I saw that Larry was standing in the bathroom with the door open and he was completely nude and his penis was erected."

The "straw that broke the camel's back" so to speak was an incident when appellant picked up the boy at the church parking lot, while the latter was riding his bicycle. The father then drove by the house to advise that he had the child, and, according to appellee, when the car stopped, the boy endeavored to jump out, at which time the father grabbed him and pulled him back into the seat. Her husband ran out and appellant "jumped him." A neighbor came to the assistance of her husband and a general fight ensued.[1] She said that the boy was very upset, objected strenuously to visiting the father, was thereafter afraid to go places where his father might pick him up, and was even reluctant to talk to him over the telephone. After this incident there was no further visitation at all. She also testified that her ex-husband

---

[1]Appellant was fined $200 for disturbing the peace, and the neighbor was also fined.

would call, and when child support was mentioned, would advise that he was not going to pay any child support, and wouldn't have to because he did not have a job.

Susan McIntosh, the sister of appellee, testified that after her sister and Lumpkin were married, he would come to her father's house to visit, and that when he thought she was alone, he would corner her, put his hands all over her, and try to make her feel of him; that when she was about 15, he forced himself on her in the bedroom, always unzipped, and would try to make her look at him.

Appellant's version was that he had contacted appellee's attorney on several occasions to try and arrange with her proper support payments. To this testimony, appellee stated that she had been contacted by her original attorney, but only as to trying to arrange visitation rights; that she did not recall any discussion relative to support payments. His version of the incident in front of the Gregory home was likewise different. He stated that the mother came out, snatched the child, and he got out of the car into the street; that the husband and Blackburn then came after him. Lumpkin admitted that he had taken the little boy to a pool hall on one or two occasions "when there was no one else in there so he could get in there and roll the balls around on the table." While he acknowledged that he received an injured hand in a fight at the pool hall, he denied that the boy was present at the time. It was his contention that the boy was fearful of him simply because his ex-wife and her present husband had instilled the fear into the child. Lumpkin testified that he had only worked six months in the last year and a half, but that he had offered to pay his wife a lump sum of $500 for child support, but she refused the offer.

It would appear from the evidence that appellant has had some difficulty in holding a job (which his wife stated had been true since their marriage), and, because of unemployment, the chancery court did not order any support payments. Of course, as a usual matter, a parent is entitled to visitation rights with his, or her, child, though there are situations in which this right is forfeited. Here, the chancellor saw and heard all of these witnesses, and thus had an opportunity to make an evaluation that this court does not have. In

*Wilson* v. *Wilson,* 228 Ark. 789, 310 S.W. 2d 500, we commented that, "We know of no type of case wherein the personal observations of the court mean more than in a child custody case" — and this would also be true when visitation rights are involved. In addition, the court talked with the little boy in chambers and after the conclusion of the case, rendered findings, *inter alia,* as follows:

> "Here the father has not supported the child for the past extended period and has not seen him until recently within two years. His recent contacts with the child have been under circumstances which naturally tend to cause the child concern. As a result of all this the child fears him and has no desire to know him."

The Court felt that the best interest of the child would not be fostered by forced visitation at the present time.

Of course, appellant has the right, upon a showing that circumstances have changed, to again, at some future time, seek a revision of the order.

Affirmed.

BYRD, J., not participating.