Walton Thomas BUCKLEY *v.*
Kimberly Kaye Carter BUCKLEY

CA 00-1368     43 S.W.3d 212

Court of Appeals of Arkansas
Division II
Opinion delivered May 2, 2001

*Tiner & Spruell* and *Lori B. Winters*, by: *Lori B. Winters*, for appellant.

*Durrett & Coleman*, by: *Chadd L. Durrett, Jr.*, for appellee.

ANDREE LAYTON ROAF, Judge. Walton Thomas Buckley appeals the chancery court's order awarding Kimberly Kay Carter Buckley custody of their two minor children and denying him visitation rights. On appeal, he argues that the trial court erred in awarding Ms. Buckley custody because the preponderance of the evidence did not support the court's finding that Ms. Buckley is fit

and he is unfit to have custody, and he further contends that it is not in the best interests of the children to be in Ms. Buckley's custody. He also argues the court erred in denying him visitation. We affirm.

Thomas and Kim Buckley were married on June 21, 1990, in Tennessee. During their marriage, they had two children, Janet, born on May 7, 1991, and Marcia, born on June 3, 1992. Additionally, Ms. Buckley had a child from a previous marriage, Jennifer Buckley, born on May 15, 1984, who was legally adopted by Mr. Buckley while the parties were married. Sometime in January of 1996 the parties separated, and Ms. Buckley moved to Arkansas in July of 1996. In September of that year, Ms. Buckley filed for divorce in Arkansas and two days later, Mr. Buckley filed for divorce in Tennessee. Mr. Buckley filed a motion to dismiss and answer in Arkansas, and after no action was taken for one year, the Arkansas case was dismissed without prejudice for want of prosecution.

On December 9, 1998, Ms. Buckley filed a new complaint for divorce in Arkansas, and the case came to trial on June 27, 2000. During the two-day trial, the chancellor heard testimony from both parties; Ms. Buckley's former employee, Kelley Bailey and her husband Randall Bailey; Pamela Buckley, Mr. Buckley's ex-wife; Dana Avant and Rob Rollans, Ms. Buckley's former co-workers; Laura Thomas, Ms. Buckley's former babysitter; Melissa Joyce Stoner, Ms. Buckley's friend; April Revelle, Ms. Buckley's babysitter; Paul Weaver, Ms. Buckley's friend; Jennifer Buckley; Trey Boals, Jennifer's ex-boyfriend; Linda Kline, Jennifer's paternal grandmother; and John Boals, Trey's father. A final ordered, entered August 14, 2000, awarded Ms. Buckley a divorce and custody of the parties' minor children, appointed a guardian ad litem to periodically evaluate the best interests of the children, and denied Mr. Buckley visitation rights. Mr. Buckley appeals the chancellor's award of custody to Ms. Buckley and the denial of his visitation rights.

Chancery cases are tried *de novo* on appeal. *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999). The findings by a chancellor will not be disturbed unless they are clearly against the preponderance of the evidence. *Stone v. Steed*, 54 Ark. App. 11, 923 S.W.2d 282 (1996). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been

committed. *Fonken v. Fonken,* 334 Ark. 637, 976 S.W.2d 952 (1998).

For his first argument, Mr. Buckley argues that the chancellor erred in awarding custody of the parties' minor children to Ms. Buckley. He argues that the preponderance of the evidence does not support the trial court's findings that Ms. Buckley is fit and that he is unfit nor did it support the finding that it is in the best interests of the children to be in Ms. Buckley's custody. Mr. Buckley argues that the testimony of Trey Boals and Kelly and Randall Bailey establish that Ms. Buckley is unfit.

Trey Boals testified that he consumed alcohol at Ms. Buckley's home with her permission, that Ms. Buckley asked him to lie about his relationship with her daughter Jennifer, and that Ms. Buckley gave her younger children medication so they would sleep through parties at her house. However, on cross-examination Trey acknowledged that Mr. Buckley contacted him, accused him of having sex with the Buckleys' minor daughter, Jennifer, and told him that he had committed a Class Y felony and could get ten to forty years to life. Further, John Boals, Trey's father testified, "I felt like that he [Mr. Buckley] just had us over a barrel." Based on this testimony, the chancellor, in his findings, stated that Mr. Buckley "manipulated and coerced" Trey's testimony. Further, while Kelly and Randall Bailey testified that Ms. Buckley was drunk at a lake outing one weekend and sat on a young boy's lap, Ms. Buckley denied the allegations and testified that she had fired Ms. Bailey from her job two or three years earlier.

In regard to Ms. Buckley's fitness, the chancellor found, "That although evidence in this case indicates that plaintiff [Ms. Buckley] has been somewhat derelict as relates to the providing of appropriate surroundings and supervision for the three minor children since the separation of the parties, such parental shortcomings do not justify nor mandate the removal of said children, their welfare considered, from plaintiff to defendant." The chancellor noted the Ms. Buckley was "less than forthright" in testimony regarding her parental supervision, but he found she was "a fit parent to have the care and custody of the three minor children of the parties, subject to restrictions" that prohibited her from having an overnight male guest and prohibiting her from giving the minor children alcohol. Evidence before the chancellor established that Ms. Buckley is a registered nurse and has steadily been employed; she is the only source of income for the family; four witnesses testified that she is a good mother and has a good relationship with

her children and the children make good grades in school; and she and her children lived with the man she intended to marry for a short period four years after she was separated because she despaired of ever obtaining a divorce from Mr. Buckley. Based on this evidence, and the chancellor's superior position to judge the credibility of the witnesses, the chancellor's finding that Ms. Buckley is fit is not clearly erroneous.

In regard to Mr. Buckley, the chancellor found that he, "without valid justification or excuse, failed to support . . . his children in any way (financially, educationally, physically, spiritually, or otherwise) for over four years continuously." The chancellor then noted Mr. Buckley claimed to have spent $18,000 in attorney fees and costs in his domestic case without coming to court to seek visitation or custody and that "the evidence in this case is clear that defendant unlawfully entered the home of plaintiff for the purpose of gathering evidence and by defendant's own admission obtained, without anyone's permission, undergarments of his oldest daughter, sending the same to a laboratory for some sort of forensic examination." The chancellor observed that Mr. Buckley showed several people nude pictures of his daughter, that he "purloined without permission." He continued, "Further, there was credible evidence as to inappropriate acts done by defendant in the presence of his children contrary to their welfare and best interests." He noted that Mr. Buckley "manipulated and coerced" the testimony of Trey Boals. Further, he stated that Mr. Buckley claimed to be totally disabled and lived with his mother in a "very small dwelling" and had no "present suitable surroundings for the exercise of custody or visitation." He concluded, "The welfare of the children considered, the Court finds that defendant is not a fit nor proper person to have either the care or custody of the said minor children, or to be the beneficiary of visitation rights as relates to said children."

■ Mr. Buckley argues that he did not coerce the testimony of Trey and John Boals and that they both testified that Mr. Buckley had not threatened Trey with criminal prosecution. He also states that he did not engage in inappropriate acts with his children, which he says is supported by the fact that there is no evidence that DHS had taken any action against him, and he only showed the nude photograph of his daughter out of his concern for her welfare. He also argues that there is no evidence that his disability renders him unfit to be a parent. Even if true, these arguments ignore the fact that Mr. Buckley: (1) has not attempted to support or seek visitation with his children during the four years since he and Ms. Buckley separated, though he admitted monitoring his wife and

children's movements in person and via videotape; (2) has not called his children or sent them birthday or Christmas cards or presents; and (3) admitted going through his wife's trash and finding his daughter's underwear, which he sent off for laboratory testing. Further, Laura Thomas testified that Mr. Buckley stalked her and threatened her and her children while she was Ms. Buckley's baby-sitter, and Rob Rollans and Dana Avant testified that Mr. Buckley came to Ms. Buckley's work place and said that Ms. Buckley was a IV drug user, had been fired from every job she had, was a drunk, and stole drugs from patients and her previous employers. Also, Mr. Buckley's adopted daughter testified that he engaged in inappropriate sexual conduct with his children prior to the parties' separation. Based on this evidence and the chancellor's opportunity to judge Mr. Buckley's credibility, the chancellor's finding that he was unfit to have custody of the parties' minor children is not clearly erroneous.

■ ■ Mr. Buckley also argues that the chancellor erred in determining it was in the best interests of the children to award custody to Ms. Buckley. This court has stated the best interest of the child is the polestar for making judicial determinations concerning custody. *Welch v. Welch*, 5 Ark. App. 289, 635 S.W.2d 303 (1982). As previously discussed, the chancellor's findings that Mr. Buckley is unfit and Ms. Buckley is fit to have custody are supported by the preponderance of the evidence. Further, the chancellor appointed a guardian ad litem to periodically evaluate the best interests of the children and report their status every four months. "We know of no type of case wherein the personal observations of the court mean more than in a child custody case." *Lumpkin v. Gregory*, 262 Ark. 561, 559 S.W.2d 151 (1977). In light of this, and based on our de novo review of the record, we cannot say that the chancellor reached an incorrect result as to the best interests of the children.

Lastly, Mr. Buckley argues that the trial court erred in terminating his visitation rights with his minor children. However, the court did not terminate Mr. Buckley's visitation rights, as he never pursued any visitation rights for the court to terminate; the chancellor simply declined "to award any visitation rights to the defendant at this time, finding that such visitation would be detrimental to the welfare of the three children." Mr. Buckley correctly notes that this court has consistently upheld visitation rights of noncustodial parents and asserts that the Arkansas Supreme Court has on only one occasion affirmed a trial court's denial of a parent's visitation rights. *See Hawn v. Hawn,* 8 Ark. App. 69, 648 S.W.2d 819 (1983)

(citing *Lumpkin v. Gregory*, 262 Ark. 561, 559 S.W.2d 151 (1977)). In *Hawn*, this court noted:

> Except for the *Lumpkin* decision, the Supreme Court and this Court have decided cases in which the termination of visitation was sought on appeal or ordered by the trial court; in each instance, the courts have upheld the parent's right to visitation. *Welch v. Welch*, 5 Ark. App. 289, 635 S.W.2d 303 (1982) (Court reversed denial of visitation to mother during summer months when father had custody of child); *Lewis v. Lewis*, 260 Ark. 691, 543 S.W.2d 222 (1976) (Court reversed trial court's denial of visitation to father who espoused religion to child and the mother); *McCourtney v. McCourtney*, 205 Ark. 111, 168 S.W.2d 200 (1943) (Court reversed trial court's order granting father visitation upon written permission of mother); *Lockhart v. Lockhart*, 143 Ark. 276, 220 S.W. 44 (1920) (Court reversed the trial court's denial of visitation to the mother whom father divorced on grounds of adultery); *DeReitmatter v. DeReitmatter*, 75 Ark. 193, 87 S.W. 118 (1905) (Court affirmed decree awarding custody to mother because father was cruel and a drunk — even so, it upheld the court's order permitting the father visitation after a showing that he had quit drinking); and *Haley v. Haley*, 44 Ark. 429 (1884) (Court affirmed visitation given to mother charged with immorality). Undoubtedly, there are cases in which circumstances warrant the termination of a parent's visitation rights. However, such action is a drastic one which our trial courts have cautiously employed and which our appellate courts have critically reviewed.

In *Lumpkin*, the court found the father forfeited his rights because he (1) made no support payments; (2) refused to bring his son home after visits, and he beat up appellee when she went to pick up the child; (3) took the child to a pool hall; and (4) exposed himself to appellee's teenage sister during his marriage to appellee. We find Mr. Buckley's behavior to be analogous to the father's behavior in *Lumpkin*, if not more egregious. Therefore, the current circumstances warrant the denial of his visitation rights. This court has stated the best interest of the child is the polestar for making judicial determinations concerning custody and visitation. *Welch, supra*. In this instance, the same evidence that warranted finding Mr. Buckley unfit supports the denial of his visitation rights.

Affirmed.

STROUD, C.J., and PITTMAN, J., agree.