Cite as 2022 Ark. App. 470

# ARKANSAS COURT OF APPEALS

DIVISIONS I, III & IV
No. CV-21-573

| | | |
|---|---|---|
| | | Opinion Delivered November 16, 2022 |
| CASSEY BASSETT | | |
| | APPELLANT | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28DR-21-70] |
| V. | | |
| | | HONORABLE TONYA M. |
| JEREMY EMERY; KENDRA EMERY; AND DUSTY EMERY | | ALEXANDER, JUDGE |
| | APPELLEES | REVERSED AND REMANDED |

## LARRY D. VAUGHT, Judge

Cassey Bassett appeals the decision of the Greene County Circuit Court denying her motion to modify custody and visitation of her three-year-old child, herein referred to as Minor Child 1. On appeal, Cassey has abandoned any claim regarding custody; she appeals only the court's denial of her petition to establish visitation. Cassey argues that, in analyzing her request for visitation, the circuit court improperly considered the petition to adopt Minor Child 1, which appellees Kendra and Jeremy Emery[1] filed in a separate court. She contends that the circuit court erroneously applied the legal standards relevant to adoption rather than the law governing visitation. We reverse and remand.

---

[1]Dusty Emery is Minor Child 1's biological father. Jeremy is Dusty's brother. Jeremy and Kendra are married and have had custody of Minor Child 1 since 2018.

In October 2017, the Arkansas Department of Human Services (DHS) removed Minor Child 1 from Cassey's custody due to inadequate supervision and Cassey's drug use.[2] Minor Child 1 was then adjudicated dependent-neglected. A year later, a permanent-custody and closure order was entered awarding custody of Minor Child 1 to Jeremy and Kendra. The order was silent regarding visitation.

In the years following the entry of the permanent-custody order, Cassey worked to remedy the problems that caused her to lose custody of her children. At the time of the custody hearing that gave rise to this appeal, Cassey had stable employment, a clean and appropriate home, and safe and reliable transportation. She volunteered regularly with a faith-based women's-recovery program, and she had started taking community-college courses to further her education. She had also regained custody of three of her other children, and she had no pending criminal charges.

The evidence at the hearing revealed that, starting in 2020, Cassey began sending money to the Emerys for Minor Child 1's support. Cassey testified that she tried, on numerous occasions, to ask the Emerys for an opportunity to visit with Minor Child 1, but they ignored her messages and calls. Cassey then filed a petition for modification of custody on February 26, 2021. She sought full custody of Minor Child 1 or, alternatively, requested that a visitation schedule be set by the court.

At the hearing, there was conflicting testimony regarding the last time Cassey had seen Minor Child 1, but the parties appear to agree that it was at least two years before Cassey filed

---

[2]Cassey also lost custody of four other children. Three of those children have been returned to her custody, and she exercises visitation with one child. None of Cassey's other children are a party to this appeal.

the motion to change custody. The Emerys acknowledged that they had "decided that it was best" for Minor Child 1 not to have any contact with Cassey. Minor Child 1 calls the Emerys "mom and dad," and the Emerys thought that visitation with Cassey would only confuse the child. Jeremy stated that Cassey hadn't tried contacting them about seeing Minor Child 1 "unless it was a special day, a birthday or a holiday; that was it."

A month after Cassey filed her petition for modification, the Emerys filed, in a different court, a petition to adopt Minor Child 1. The cases were not consolidated, and a hearing was held on Cassey's petition to modify custody or establish visitation on July 19, 2021. At the hearing, the Emerys relied heavily on their pending adoption petition as a reason to deny Cassey's requests for custody and visitation. They argued that it would be confusing to the child to establish a new relationship and routine only to drastically change the child's life again with the adoption, which they argued was likely to be granted. The Emerys urged the court to find that, because there was a likelihood that the adoption would be granted, it would not be in Minor Child 1's best interest to change custody or establish a visitation schedule.

The circuit court agreed and, as a result, cited the legal standards governing petitions to adopt a child without the consent of the biological parent in its analysis of Cassey's petition to change custody or establish visitation.[3] Following the hearing, the court denied the petition for

---

[3]Arkansas Code Annotated section 9-9-207 (Repl. 2020) discusses when consent to an adoption by a biological parent is unnecessary. Pursuant to section 9-9-207(a)(2), a parent's consent to adoption is not required of a parent of a child in the custody of another if the parent for a period of at least one year has failed significantly without justifiable cause to communicate with the child or to provide for the care and support of the child as required by law or judicial decree. Even when parental consent is unnecessary, the court must still determine if granting the adoption is in the best interest of the child. *Racine v. Nelson*, 2011 Ark. 50, at 16, 378 S.W.3d 93, 102.

custody, stating that Minor Child 1's need for stability supports the finding that it is in the child's best interest to remain in the Emery's custody. The court noted that Arkansas law does not require a biological parent's consent to the adoption of his or her child if more than a year has passed without the parent having meaningful contact with the child or providing meaningful support. Regarding visitation, the court stated that it was "following the law, considering the evidence presented, and considering the impressions of the court based on the testimony presented." In the order, the court's denial of Cassey's request for visitation includes specific findings that directly relate to the elements necessary to grant an adoption in Arkansas without the consent of the biological parent, such as its finding that there had been periods of a year or more in which Cassey did not have meaningful contact with Minor Child 1 and did not provide meaningful support.

Cassey now appeals the court's denial of her request to establish visitation. On appeal, she argues that the circuit court improperly decided the visitation issue on the basis of an erroneous application of the legal standards applicable to adoption, not visitation. Cassey's request for relief in her appellate brief does not seek reversal of the denial of her petition for custody; it only asks that we reverse the court's order and remand the case to establish at least some minimal visitation. Because we hold that the court erroneously applied the wrong legal standard in this case, we reverse and remand for the court to decide the visitation issue using Arkansas law governing a biological parent's right to visitation.

Child-visitation cases are reviewed de novo on the record and will not be overturned unless clearly erroneous. *Phillips v. Phillips*, 2014 Ark. App. 486, at 2, 442 S.W.3d 901, 902. The

permanent-custody and closure order, which was in place prior to Cassey's petition, was silent as to visitation. Arkansas Code Annotated section 9-13-101(b)(1)(A)(vii) provides that:

> *(a)* A parent who is not granted sole, primary, or joint custody of his or her child is entitled to reasonable parenting time with the child unless the court finds after a hearing that parenting time between the parent and the child would seriously endanger the physical, mental, or emotional health of the child.

> *(b)* At the request of a party, a court shall issue a written order that:

> *(1)* Is specific as to the frequency, timing, duration, condition, and method of scheduling parenting time with a parent who is not granted sole, primary, or joint custody of his or her child; and

> *(2)* Takes into consideration the developmental age of the child.

Ark. Code Ann. § 9-13-101(b)(1)(A)(vii) (Supp. 2021). Here, Cassey was not given statutory visitation rights, and the court never made a finding that visitation would endanger Minor Child 1. While Cassey did not argue, either below or on appeal, that the circuit court's order violates section 9-13-101, she did preserve the inverse argument: that the circuit court erroneously applied the wrong standard when it cited Arkansas law governing nonconsensual adoption. We cite section 9-13-101, therefore, to illustrate Cassey's point that Arkansas law contains legal standards governing visitation but that the circuit court in this case erroneously applied the adoption-law elements instead.

We recognize that fixing visitation rights is a matter that lies within the sound discretion of the circuit court, and the main consideration in making judicial determinations concerning visitation is the best interest of the child. *Hudson v. Kyle*, 365 Ark. 341, 344, 229 S.W.3d 890, 892–93 (2006). The Emerys argue—and the dissenting opinions would hold—that the circuit court properly considered the pending adoption petition as part of its best-interest analysis. We

5

do not doubt that the circuit court was attempting to act in the child's best interest. We note, however, that the United States Supreme Court has recognized that parents have a fundamental liberty interest in the care, control, and custody of their own children, *Troxel v. Granville*, 530 U.S. 57, 66 (2000), and Arkansas has developed both statutory and case law governing the circumstances under which a biological parent can be denied visitation. Ark. Code Ann. § 9-13-101(b)(1)(A)(vii); *Buckley v. Buckley*, 73 Ark. App. 410, 415–16, 43 S.W.3d 212, 215 (2001); *Hawn v. Hawn*, 8 Ark. App. 69, 73, 648 S.W.2d 819, 821 (1983); *Lumpkin v. Gregory*, 262 Ark. 561, 564, 559 S.W.2d 151, 153 (1977). In *Hawn*, we explained that,

> [u]ndoubtedly, there are cases in which circumstances warrant the termination of a parent's visitation rights. However, such action is a drastic one which our trial courts have cautiously employed and which our appellate courts have critically reviewed.

8 Ark. App. at 73, 648 S.W.2d at 821. By statute, Arkansas lawmakers have determined the threshold necessary for denying a biological parent the right to visit his or her own child: a finding by the circuit court that visitation between the parent and child "would seriously endanger the physical, mental, or emotional health of the child." Ark. Code Ann. § 9-13-101(b)(1)(A)(vii)*(a)*.

In this case, the circuit court failed to apply that framework when evaluating Cassey's request for visitation. Instead, under the broad umbrella "best interest," it attempted to predict the outcome of the Emerys' pending petition to adopt Minor Child 1. We reverse the circuit court's denial of Cassey's petition to establish visitation with Minor Child 1, and we remand the case for the circuit court to decide the visitation issue using the appropriate legal standards.

Reversed and remanded.

VIRDEN, GLADWIN, BARRETT, and WHITEAKER, JJ., agree.

6

KLAPPENBACH, GRUBER, MURPHY, and BROWN, JJ., dissent.

MIKE MURPHY, Judge, dissenting. I disagree with the majority that this case should be reversed and remanded. The majority declines to answer Cassey's specific arguments as they are presented on appeal, and instead crafts a remedy for her, in derogation of the circuit court's supported best-interest finding. I would affirm.

The majority cites the visitation statute, Ark. Code Ann. § 9-13-101(b)(1)(A)(vii), reasoning that the circuit court erred by not considering it in its denial of visitation. Cassey never once cited this statute to this court or to the court below. She is bound by the scope and nature of the arguments made at trial, *Rudder v. Hurst*, 2009 Ark. App. 577, at 13, 337 S.W.3d 565, 574, and to say the court erred for failure to make a finding that visitation "would seriously endanger the physical, mental, or emotional health of the child" would be to make an argument for the appellant that she did not make for herself. We do not research or develop arguments for an appellant. *Davis v. Davis*, 2013 Ark. App. 180, at 6.

Furthermore, failure to make an explicit finding in this instance is not fatal, because unless the contrary can be shown, we presume that the circuit court acted properly and made such findings of fact as were necessary to support its judgment. *Wyatt v. Wyatt*, 2018 Ark. App. 177, at 7, 545 S.W.3d 796, 802. So, while the circuit court never cited the visitation statute in its order, it also never cited the adoption statute. Instead, it discussed some elements from both in support of its determination—a determination that gets the benefit of the doctrine of implied presumption. The fixing of visitation rights is a matter that lies within the sound discretion of the trial court. *Hudson v. Kyle*, 365 Ark. 341, 344, 229 S.W.3d 890, 892–93 (2006). The main consideration in making judicial determinations concerning visitation is the best interest of the

7

child. *Id.* On a de novo review, I would hold that the circuit court did not clearly err by considering elements of the contested adoption statute as part of its analysis in denying visitation.

Cassey made two arguments to this court. First, that the circuit court improperly considered the upcoming adoption and factors pertaining to adoptions wherein parental consent is unnecessary in denying her petition for visitation. And second, that even if it were appropriate for the court to consider the adoption, the evidence demonstrates that her failure to communicate with or provide support for the child for more than a year would not be a significant failure without justifiable cause.

Cassey never once objected below to evidence of, or arguments concerning, the adoption proceedings. Nor did she once argue below that the court may not consider the upcoming adoption in its visitation analysis. We will not review a matter on which the trial court has not ruled, and the burden of obtaining a ruling is on the movant; matters left unresolved are waived and may not be raised on appeal. *Stell v. Stell*, 2021 Ark. App. 478, at 2, 638 S.W.3d 855, 857. A circuit court is allowed to consider everything properly before it. This record supports the circuit court's findings that some of the elements of an adoption under Arkansas Code Annotated section 9-9-207 are present. It was within the circuit court's province to determine what weight to give that evidence, regardless of mitigating factors. *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002).[1]

---

[1]To be abundantly clear, the adoption case will be its own proceeding with its own evidence to be weighed by another court. For whatever this dissent is worth, it should absolutely not be read to support any particular outcome.

To reverse and remand here would be to ignore the circuit court's concerns for the minor child's well-being. The circuit court explained why it did not want to grant visitation at this time:

> [T]he Court doesn't want to . . . start something when this child's almost four years old. So [Cassey] will still be allowed to appear and defend in the adoption proceeding. But as for now, the Court will not be allowing visitation given the fact that the amount of time that has transpired[.]

The polestar in matters concerning children is what is in the best interest of the child. This record established that there were some elements that could support an adoption: the child was young, granting visitation would be confusing to the child, and the child had absolutely no relationship with her biological mother (regardless of fault). The court concluded that it would be in the best interest of the young child to maintain the status quo at least until a determination on the adoption petition could be considered. I would not say this was clear error, especially considering that Cassey made no argument that she was entitled to reasonable parenting time as a matter of right absent the specific findings set forth in Arkansas Code Annotated section 9-13-101(a).

I would affirm.

Klappenbach, Gruber, and Brown, JJ., join.

*Scott Emerson, P.A.*, by: *Scott Emerson*, for appellant.

*Benson Law Firm, P.A.*, by: *S. King Benson*; and *Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellee.