Cite as 2024 Ark. App. 331

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-23-324

| | | |
|---|---|---|
| DAKODA BAKER | | Opinion Delivered May 22, 2024 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. 60DR-20-2040] |
| V. | | |
| SHELBY BAKER | | HONORABLE SHAWN J. JOHNSON, JUDGE |
| | APPELLEE | |
| | | REVERSED AND REMANDED |

**RITA W. GRUBER, Judge**

On January 19, 2023, the Pulaski County Circuit Court entered an original divorce decree granting Dakoda Baker a divorce from Shelby Baker on the grounds of eighteen months' separation. The decree awarded the parties joint legal custody of their only child, (MC), born in 2018, and awarded Shelby primary physical custody of MC with summer visitation to Dakoda, who lives in Florida.

Dakoda contends on appeal that the circuit court erred by (1) relying on Arkansas Code Annotated sections 28-1-101 et seq. (Repl. 2012) to make a custody determination and (2) awarding Shelby primary physical custody of MC because this was not in MC's best

interest. These points are interrelated, and we combine them as one. The issue is the circuit court's finding of best interest.[1]

The Bakers were married on March 17, 2017, and separated on May 16, 2020, while they were living in Colorado. Shelby returned to Arkansas in May 2020 with MC, who was the only child of the marriage. Dakoda also returned to Arkansas but soon went back to Colorado, ultimately moving to Florida in June 2020. By agreement, the parties shared custody of MC beginning in August 2020 and transferred physical custody every three months. As MC approached school age, the parties anticipated that changing physical custody every three months would no longer be feasible. Dakoda filed a complaint for divorce in June 2020, seeking custody of MC and filed an amended complaint in February 2022.

A final hearing was held on September 27, 2022. Both parties requested an award of joint legal custody, but each asked to be awarded primary physical custody with the other parent to receive summer visitation. The circuit court informed the parties at the hearing's conclusion that "this was a really hard call" and nothing had caused anyone to win or lose. The court stated, "We're trying to build the best human being that we can possibly get to that twenty-year-from-now time frame." The court then voiced its concern about MC's connection to a half sibling, Shelby's six-month-old daughter, stating that "under the laws of

---

[1]The circuit court's award of joint legal custody is not challenged by the parties on appeal. Nor do the parties challenge the court's order that our statutory presumption for joint custody was overcome by the parties' living in separate states with significant mileage between them.

probate, there's 'all kinds' of connections there." Dakoda, through counsel, immediately objected that this was not a probate case. The court stated,

> It doesn't matter. The same issue applies . . . the idea that the best interest, and that's what those factors are in Probate are best interest factors. The notion that there are other siblings related, it does apply. It applies here because this child has connections with other family members that are in their family tree. Now, there are also family tree members in Florida, I get that. But I, I struggle to figure out what the better arrangement would be.

> I applaud Mr. Baker for setting those things up. I think that's great. That's remarkable. And the family connection you have is astoundingly wonderful. But Ms. Baker has that too. It may not be of the same dynamic that you do, and you're critical of it, I understand that. But what we're going to do because school is going to start up is that for now, during the school year, she'll stay here. But I'm giving you the entire summer. As soon as that summer starts, you've got all ninety days or thereabouts. Visitation can be altered by motion. We are finding that joint custody in the legal sense is awarded to you both with, with mother as primary joint custody . . . .

The circuit court complimented the parties' different styles of parenting and their family connections. The court stated, "It's the connection with this half sibling . . . that I yield to. That and just that . . . there's really nothing overarching to suggest that one, that moving [MC] to Florida is, on a permanent basis is what we ought to do under these circumstances." This finding was reiterated in the decree: "Based upon Ark. Code. Ann. § 28-1-101 et seq., more specifically because of the minor child's relationship with her half-sibling, . . . the court finds it is in the minor child's best interest that [Shelby] maintain primary physical custody with [Dakoda] having visitation."

In an action for divorce, the award of custody of a child of the marriage shall be made solely in accordance with the welfare and best interest of the child. Ark. Code. Ann. § 9-13-

101(a)(1)(A)(i) (Supp. 2023). In an action for an original child-custody determination in a divorce or paternity matter, there exists a rebuttable presumption that joint custody is in the best interest of the child. *See* Ark. Code. Ann. § 9-13-101(a)(1)(A)(iii). This presumption may be rebutted if the court finds by clear and convincing evidence that joint custody is not in the best interest of the child. Ark. Code. Ann. § 9-13-101(b)(1).

The value of keeping siblings together is a factor to be considered in determining what is in a child's best interest, but it cannot rise to the level of a presumption contradicting the statutory best-interest standard. *Atkinson v. Atkinson*, 72 Ark. App. 15, 20, 32 S.W.2d 41, 45. The general rule regarding full siblings is that young children should not be separated from each other absent exceptional circumstances. *Id.* This prohibition against separating siblings in the absence of exceptional circumstances does not apply with equal force where the children are half siblings. *See also Bell v. Bell*, 2022 Ark. App. 279, at 12, 646 S.W.3d 678, 687 (where "the children . . . having more time with subsequently born half siblings and extended family on both sides" was only one of the factors that the circuit court considered in modifying custody and visitation custody).

On appeal, Dakoda argues that the circuit court erroneously applied the legal standards relevant to another area of law rather than the law governing visitation. *Bassett v. Emery*, 2022 Ark. App. 470, is instructive. In *Bassett*, Cassey Bassett filed a petition to modify custody and visitation in a previous custody award to Kendra and Jeremy Emery.[2] A month

---

[2]Basset had lost custody in proceedings with the Arkansas Department of Human Services.

later, the Emerys filed a petition to adopt in a different court. The cases were not consolidated, and the circuit court held a hearing on the issue of visitation. The Emerys relied on their pending adoption petition as reason to deny Bassett's request, contending that it would not be in the child's best interest to change custody or establish visitation because of the likelihood of adoption. *Id.* at 3–4. They argued that it would be confusing to the child to establish a new relationship and routine only to drastically change things again with adoption. *Id.* at 4. The circuit court, agreeing with the Emerys, cited the legal standards governing petitions to adopt a child without consent of the biological parent in its analysis of Cassey's petition to change custody or establish visitation. *Id.* Cassey's petition was denied.

In *Bassett*, Cassey contended on appeal that the circuit court erroneously applied the legal standards relevant to adoption rather than the law governing visitation. This court reversed and remanded, agreeing with Cassey and analyzing the case as follows:

> Cassey's request for relief in her appellate brief does not seek reversal of the denial of her petition for custody; it only asks that we reverse the court's order and remand the case to establish at least some minimal visitation. Because we hold that the court erroneously applied the wrong legal standard in this case, we reverse and remand for the court to decide the visitation issue using Arkansas law governing a biological parent's right to visitation.
>
> Child-visitation cases are reviewed de novo on the record and will not be overturned unless clearly erroneous. . . .
>
> We cite section 9-13-101, therefore, to illustrate Cassey's point that Arkansas law contains legal standards governing visitation but that the circuit court in this case erroneously applied the adoption-law elements instead.
>
> We recognize that fixing visitation rights is a matter that lies within the sound discretion of the circuit court, and the main consideration in making judicial determinations concerning visitation is the best interest of the child.

> *Hudson v. Kyle*, 365 Ark. 341, 344, 229 S.W.3d 890, 892-93 (2006). The
> Emerys argue--and the dissenting opinions would hold--that the circuit
> court properly considered the pending adoption petition as part of its best-
> interest analysis. We do not doubt that the circuit court was attempting to act
> in the child's best interest. We note, however, that the United States Supreme
> Court has recognized that parents have a fundamental liberty interest in the
> care, control, and custody of their own children, *Troxel v. Granville*, 530 U.S.
> 57, 66 (2000).

*Bassett*, 2022 Ark. App. 470, at 5–6 (some internal citations omitted).

In the present case, Dakoda argued at the hearing's conclusion that the best interest of MC lies with an award of primary physical custody to him. Shelby argued the same. The circuit court explicitly, and sua sponte, referred to the probate code as the determining factor to address its concerns about MC's connections to the half sibling. Dakoda's attorney immediately pointed out that this was not a probate case, but the court stated that the best-interest issues were the same and that the notion of other related siblings applied. The court's written order specifically stated, "Based upon Ark. Code. Ann. § 28-1-101 et seq., more specifically because of the minor child's relationship with her half-sibling, . . . the court finds it is in the minor child's best interest that [Shelby] maintain primary physical custody."

Dakoda argues that the circuit court erroneously applied the legal standards relevant to another area of law rather than the law governing visitation, thus making an even stronger case for reversal than was made by the appellant in *Bassett*. Here, in determining that primary physical custody with Shelby was in MC's best interest, the circuit court explicitly and solely relied on the Probate Code and MC's relationship with her half sibling. Moreover, in *Atkinson v. Atkinson*, 72 Ark. App. 15, 32 S.W.3d 41 (2003), we held that keeping siblings

6

together cannot be the sole reason for a custody decision. *See also Delgado v. Delgado*, 2012 Ark. App. 100 (holding that the circuit court misstated the best-interest standard in custody cases by finding that appellant failed to adhere to the standards adopted by the local community but ruling that the circuit reached the right result despite apparently announcing a wrong reason).

The analysis engaged in by the circuit court was clearly erroneous. Accordingly, we reverse and remand to the circuit court to conduct a best-interest analysis under the legal standards governing an original determination of child custody. *See* Ark. Code Ann. § 9-13-101.

Reversed and remanded.

ABRAMSON and WOOD, JJ., agree.

*Hilburn & Harper, Ltd.*, by: *SaraCate Moery*, for appellant.

*Ryan C. Allen*, for appellee.