Betty Ann PARKER *v.* David Allen SEBOURN

02–803                                                95 S.W.3d 762

Supreme Court of Arkansas
Opinion delivered January 23, 2003

*Griffin J. Stockley,* for appellant.

One brief only.

W H. "Dub" Arnold, Chief Justice. This is an appeal from the denial of a motion to set aside an order terminating the parental rights of the appellant, Betty Ann Parker. Arkansas Code Annotated § 16-13-304 (Repl. 1999) permitted the trial court to terminate the parental rights upon the appointment of a guardian *ad litem* to represent the child. Appellant asserts that the trial court lacked subject-matter jurisdiction to terminate her parental rights and that Ark. Code Ann. § 16-13-304, as applied, violated the public policy of the State of Arkansas against bastardization of children and is, therefore, void. We hold that appellant's motion to set aside, filed nearly four years after the order of termination was entered, was untimely and affirm the trial court's denial of the motion.

The history of the case is as follows: Appellee, David Allen Sebourn, filed a petition on March 24, 1998, in Lonoke County Chancery Court, in which he sought to terminate the parental rights of the appellant, Betty Ann Parker. David Sebourn alleged that he and Betty Parker were the parents of Megan Sebourn, born June 6, 1992. He alleged that he and Betty Parker were not married at the time of the birth of Megan and had never married. Mr. Sebourn alleged that he had sole responsibility for the care and custody of Megan. He did not allege that he was seeking to establish paternity or any other underlying cause of action. He alleged that Betty Parker had indicated her desire to terminate her relationship with her daughter. Mr. Sebourn requested that a guardian *ad litem* be appointed to represent the child's interests, pursuant to Ark. Code Ann. § 16-13-304. On May 12, 1998, the Court appointed attorney Michael Stuart as guardian *ad litem* to represent the best interests of the child.

On September 14, 1998, the court issued an order terminating the parental rights of Betty Parker; the order stated that the court was basing its decision on the "pleadings filed herein, the consent to terminate parental rights executed by Betty Ann Parker, the oral report of the attorney *ad litem*, and all other evi-

dence before the Court."[1] No appeal was taken. Then, nearly four years later, Ms. Parker filed a motion to set aside the court's order terminating her parental rights. Ms. Parker alleged that the trial court had lacked subject-matter jurisdiction to terminate her parental rights. Mr. Sebourn responded that Ark. Code Ann. § 16-13-304(d)(1), as then codified, gave the court subject-matter jurisdiction.

On May 20, 2002, the motion to set aside the court's order was argued to the trial court. Ms. Parker argued that the court's order terminating her parental rights served to "bastardize" the child and was, therefore, against public policy and that the court did not have subject-matter jurisdiction. Mr. Sebourn, as well as the guardian *ad litem*, argued that the motion to set aside was not brought in a timely manner, as it was brought nearly four years after the termination order had been entered; they further argued that the original matter of termination was, in fact, "properly before the court" at that time (four years prior) and that, therefore, the court did have jurisdiction to terminate Ms. Parker's parental rights under the statute.

The trial court denied Ms. Parker's motion to set aside its order. Ms. Parker now appeals that decision. We affirm.

■ Appellant is procedurally barred to proceed in this matter. Rule 60(a) of the Arkansas Rules of Civil Procedure allows that, upon motion, the court may modify or vacate a judgment within ninety days of its having been filed with the clerk. There are, under Rule 60(c), grounds listed for setting aside a judgment *after* ninety days, but the appellant herein asserts none of those exceptions as a reason for setting aside the order outside of the ninety-day period.

■ Appellant does assert that the trial court did not have subject-matter jurisdiction. However, we have held that unless one of the seven exceptions listed in Rule 60(c) is asserted and applies, even a motion to set aside for lack of subject-matter jurisdiction must be filed within ninety days from the date the order is

---

[1] Notably, neither the abstract nor the record in this appeal contains the documents or record of proceedings to which the trial judge referred in his order.

entered. *See Summers v. Griffith*, 317 Ark. 404, 878 S.W.2d 401 (1994). We have further held that it is only when the lower court lacks jurisdiction in any and all circumstances that the challenging party will be excused from objecting to the jurisdiction in the trial court. *J.W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 836 S.W.2d 853 (1992); *Chapin v. Stuckey*, 286 Ark. 359, 692 S.W.2d 609 (1985); *Crittenden County v. Williford*, 283 Ark. 289, 675 S.W.2d 631 (1984).

The trial court indisputably had subject-matter jurisdiction to enter the order of termination in this case. Arkansas Code Annotated § 16-13-304(d) gave the chancery court concurrent jurisdiction to hear termination of parental rights cases. A motion to set aside an order of termination brought some four years after the fact and asserting no exceptions under Rule 60(c) allowing for the motion to be brought outside of ninety days cannot be entertained in this instance because the chancery court was not wholly without subject-matter jurisdiction. Appellant's motion to set aside was untimely. As appellant is procedurally barred from proceeding on appeal, we need not address the merits of appellant's public policy argument.

Affirmed.

CORBIN, J., concurs.

GLAZE, J., dissents; IMBER, J., joins.

DONALD L. CORBIN, Justice, concurring. I concur in the judgment reached by the majority that Appellant Betty Ann Parker's challenge to the order terminating her parental rights is untimely. At the time of the termination in this case, Ark. Code Ann. § 16-13-304(d) (Repl. 1999) provided chancery courts with concurrent jurisdiction to hear termination cases; however, where the parties to the chancery court proceedings are also parties to a juvenile proceeding, the juvenile court has exclusive jurisdiction. Because chancery's jurisdiction over termination cases is concurrent, Parker's challenge to the court's subject-matter jurisdiction brought some four years after the fact is barred.

It is well settled that subject-matter jurisdiction may not be stipulated by the parties and, "if lacking, cannot be induced simply

because there is no objection." *J.W. Reynolds Lumber Co. v. Smackover State Bank,* 310 Ark. 342, 352, 836 S.W.2d 853, 858 (1992). However, that general rule applies only where jurisdiction does not exist under any circumstances. *Id.* (citing *Crittenden County v. Williford,* 283 Ark. 289, 675 S.W.2d 631 (1984)). In *Crittenden County,* this court explained:

> It is true our cases hold that since jurisdiction of the subject matter cannot be conferred by consent of the parties, the absence of an objection on that basis is not ordinarily fatal. *However, it must be said the rule applies only in those instances where such jurisdiction could not, under any circumstances, exist.*

*Id.* at 291, 675 S.W.2d at 633 (citations omitted) (emphasis added). *See also Chapin v. Stuckey,* 286 Ark. 359, 692 S.W.2d 609 (1985). Because section 16-13-304(d) gave chancery courts concurrent jurisdiction to hear termination cases, it cannot be said that the chancery court in this case lacked subject-matter jurisdiction under any circumstances. Accordingly, Parker may not raise this issue for the first time some four years after the fact.

Moreover, I agree with the majority that under Ark. R. Civ. P. 60, Parker was required to file her motion to set aside the order of termination within ninety days from the date that the order was entered. Rule 60(a) provides that the trial court may modify or vacate an order within ninety days of the date that the order is entered. The only exceptions to the ninety-day limit are set out in provisions (b) and (c) of the rule. Provision (b) provides that, after the ninety-day deadline, a court only has jurisdiction to correct clerical errors, while provision (c) enumerates seven different grounds, including fraud and newly discovered evidence, by which a court may set aside or modify a judgment. *See also Blackwood v. Floyd,* 342 Ark. 498, 29 S.W.3d 694 (2000). None of the seven grounds listed in provision (c) involve an allegation of improper exercise of concurrent subject-matter jurisdiction. As such, under the plain language of Rule 60, the trial court in this case lost the power to vacate the termination order ninety days after it was entered.

A similar issue was considered by this court in *Summers v. Griffith,* 317 Ark. 404, 878 S.W.2d 401 (1994), *cert. denied,* 514

U.S. 1065 (1995). There, the father filed a motion to set aside an adoption decree, which was entered four years earlier, on the ground that the probate court lacked subject-matter jurisdiction. This court held that the motion was barred under *both* Ark. Code Ann. § 9-9-216 (Repl. 1993) (prohibiting any attack on an adoption decree after the expiration of one year) and Rule 60. This court held: "In addition, Summers did not allege that extrinsic fraud occurred which is required in these circumstances in order to vacate or modify a decree which had been entered for more than ninety days. Rule 60(c)(4)." *Id.* at 406, 878 S.W.2d at 402.

In sum, at the time of the termination in this case, the legislature had specifically empowered chancery courts to hear and determine cases involving a termination of parental rights. Section 16-13-304(d)(1) specifically provided that chancery courts "shall have the power to terminate parental rights in matters properly before the chancery court," unless the parties to the termination action are also parties to an action in the juvenile division of chancery court, in which case the juvenile court shall have exclusive jurisdiction. Given this concurrent jurisdiction, it cannot be said that the chancery court is ever wholly lacking in subject-matter jurisdiction over termination cases. As such, Parker was required to raise any objection of jurisdiction in the trial court either before the order of termination was entered or, at a minimum, within ninety days from the date it was entered, as provided in Rule 60. Because she failed to do so, I agree with the majority that her argument is now barred.

I disagree with the dissent that under section 16-13-304(d) the chancery court may only terminate parental rights in favor of DHS or a court-appointed attorney *ad litem*, regardless of whether there is another parent willing and available to take sole custody of the child. The dissent relies on Ark. Code Ann. § 9-27-341 (Repl. 2002), which provides in pertinent part:

(a)(1)(A) *This section* shall be a remedy available only to the Department of Human Services or a court-appointed attorney ad litem.

(B) It shall not be available for private litigants or other agencies.

> (2) *It shall be used only in such cases when the department is attempting to clear a juvenile for permanent placement.*
>
> (3) The intent of this section is to provide permanency in a juvenile's life in all instances where the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. [Emphasis added.]

This section is part of the Juvenile Code and only applies when the termination proceeding is before the juvenile division of chancery court. Because the present case was not before the juvenile court, this section is not applicable.

From my reading, this section provides a remedy available to DHS when a child has been removed from the home, *i.e.*, as a result of the filing of a family-in-need-of-services (FINS) petition, and DHS is attempting to permanently place the child, *i.e.*, somewhere other than a foster home. It does not govern termination proceedings brought in the chancery court. For example, this statute would not govern a divorce proceeding in chancery court where one of the parents wished to terminate his or her rights in favor of the other parent. In such a situation, DHS simply would not be involved.

Practically speaking, however, I share the concern expressed by the dissent that Appellee David Sebourn has not legally been determined to be Megan's natural father or otherwise been appointed as her legal guardian. In this respect, I encourage Parker to file a petition to establish paternity of the child. Arkansas Code Annotated § 9-10-102(b) (Repl. 2002) provides that an action brought in this state "to establish paternity may be brought at any time." *See also Office of Child Support Enforcement v. Harnage,* 322 Ark. 461, 910 S.W.2d 207 (1995). Parker, as the child's biological mother, may petition for a paternity determination under Ark. Code Ann. § 9-10-104(1) (Repl. 2002). The fact that her parental rights have been legally terminated does not alter the fact that she is Megan's biological mother. As such, I believe that she may file a petition in the trial court seeking a legal determination that Sebourn is Megan's natural father and thereby responsible for Megan's support.

Tom Glaze, Justice, dissenting. I dissent because the chancery court had no jurisdiction to enter its September 17, 1998, order terminating Betty Ann Parker's parental rights to her four-year-old daughter, Megan.

This proceeding was initiated by Megan's *putative* father, David Allen Sebourn. David filed a petition on March 24, 1998, alleging he had the sole care and custody of Megan and requesting an order terminating the parental relationship between Betty and Megan. David requested the court to appoint a guardian ad litem to represent Megan, pursuant to Ark. Code Ann. § 16-13-304 (1997).[1] In March of 1998, David's attorney obtained a waiver of service and entry of appearance from Betty, wherein she averred that she had no attorney and she was aware that she agreed to a complete and final order terminating her parental rights. In May of 1998, the chancery court purportedly appointed a guardian ad litem under § 16-13-304, and, on September 17, 1998, granted David's petition terminating Betty's parental rights to Megan, stating it was doing so based on Betty's consent, an oral report of the *attorney* ad litem,[2] and all other evidence.

On February 2, 2002, Betty moved to set aside the chancery court's September 17, 1998 order, stating that David had never filed a paternity case giving the court jurisdiction to terminate parental rights. Betty argued that the court's September 17 order was void and subject to collateral attack. Betty is exactly correct.

When David initiated his action in March of 1998, the chancery court was designated with the power to terminate parental rights *in matters properly before it*, and the court in such proceedings was required to appoint a guardian ad litem for the juvenile. *See* Ark. Code Ann. § 16-13-304(d)(1) and (2) (1997). However, the chancery court was given power to terminate parental rights only to the Department of Human Services (DHS) *or* a court-appointed attorney ad litem. *See* Ark. Code Ann. § 9-27-

---

[1] This section was amended in 2001, deleting paragraph (d).

[2] In entering its order, the trial court used the term *attorney* ad litem for the first time.

341(a)(B), which expressly provides that such an action "shall not be available for private litigants or other agencies."[3]

Here, neither the Department of Human Services nor an attorney (guardian) ad litem petitioned to terminate Betty's parental rights — David did. Clearly, David was a private litigant who sought the termination of Betty's rights, and the chancery court had no authority to award David such a remedy. Arkansas law, in particular § 9-27-341, is to be used to terminate parental rights only in cases when DHS is attempting to clear a juvenile for *permanent placement*. Thus, although the chancery court in this matter had statutory authority to terminate parental rights, it was required to do so under the terms provided by law. Here, the chancery court unquestionably exceeded its statutory authority. *See State v. Dawson*, 343 Ark. 683, 38 S.W.3d 319 (2001); *Ark. Dep't of Human Servs. v. State*, 319 Ark. 749, 894 S.W.2d 592 (1995); *see also Ark. Dep't of Human Servs. v. Thomas*, 71 Ark. App. 348, 33 S.W.3d 514 (2000).

Our court has the authority to grant a writ of *certiorari* only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Dawson*, 343 at 693. That is the situation in the present case, and while this case comes to us on appeal, our court has the discretion to treat an appeal from an order, judgment, or decree which lacks judicial support as if it were brought up on *certiorari*. *Id.* Because jurisdiction is the power or authority of a court to hear a case on its merits, lack of subject-matter jurisdiction is a defense that may be raised at any time. *Id.* Jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *State v. Circuit Court of Lincoln County*, 336 Ark. 122, 984 S.W.2d 412 (1999).

In sum, the record now before our court clearly reflects the chancery court had no authority to award David the termination-of-parental-rights relief he sought in this case and, accordingly, a

---

[3] The court of appeals noted the remedy under § 9-27-341(a), as amended by Act 1227 of 1997, that the termination of parental rights is available only to DHS and a court-appointed guardian ad litem. *See M. T. v. Arkansas Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997).

writ of *certiorari* should issue for this reason. *See Arkansas Pub. Defender Comm'n v. Greene County Cir. Court*, 343 Ark. 49, 32 S.W.3d 470 (2000) (a writ of *certiorari* granted where lower court did not have jurisdiction to hear a claim or to issue a particular type of remedy); *Pope v. Pope*, 213 Ark. 321, 210 S.W.2d 319 (1948) (Jurisdiction is defined to be "the right to adjudicate concerning the subject matter in the given case. To constitute this there are three essentials. First, the court must have cognizance of the class of cases to which the one to be adjudged belongs. Second, the proper parties must be present. And third, the point decided must be, in substance and effect, within the issue. *Howell v. Howell and Stevens v. Stevens*, 213 Ark. 298, 208 S.W.2d 22 (1948).

In this case, David not only was (and is) unavailed of the statutory authority to initiate the termination of Betty's parental rights to Megan, but also his action placed Megan in the precarious position of having *no parent legally responsible for her support, health, safety, or welfare.* Moreover, while DHS is statutorily obliged to clear a juvenile for permanent placement under § 9-27-341, DHS was never mentioned in this proceeding.

At the very least, this case should be remanded for the trial court to require compliance with the law that provides for a parent's termination of parental rights, since that court had *no authority* to render such a remedy to a private litigant like David. Nor was DHS involved as is contemplated by Arkansas law. If David is interested in Megan's welfare, as a putative father, he can certainly establish his paternity by filing suit under Ark. Code Ann. § 9-10-104 and 109 (Repl. 2002), and, after obtaining such a determination, have his support and custody obligation decided. Under all of the statutory laws mentioned above, Megan's rights are very much in issue, and as I read Arkansas law, both Betty and David will likely have the legal responsibility to ensure Megan's best interests and welfare will be met.

Because Megan is before the trial court, the court should direct that DHS be included in any following proceedings to ensure her best interests and welfare will be determined and protected. Although no court-appointed attorney ad litem has peti-

tioned to terminate Betty's parental rights in accordance with the requirements set out in § 9-27-341, the court should appoint an ad litem to represent Megan's best interests. *See* Ark. Code Ann. § 9-27-316 (Repl. 2002).

In conclusion, the concurring opinion states that, under § 16-13-304(d)(1), the chancery court had authority to terminate parental rights, while only a juvenile court had such authority under § 9-27-341. That opinion reveals a misunderstanding of the statutory provisions involved.

Arkansas law only allows termination of parental rights in adoption cases under Ark. Code Ann. § 9-9-220 (Repl. 2002), and in dependent-neglect cases under § 9-27-341. Neither of these statutory procedures empower any courts — chancery, juvenile, or circuit — to award a putative father the relief to terminate the rights of the child's mother.

Over the years, Arkansas laws, statutory and constitutional, have referred to chancery and juvenile courts as having authority to terminate parental rights, and, more recently, those courts under Amendment 80 to the Arkansas Constitution are now designated as circuit courts. Nonetheless, whatever nomenclature is used to identify our courts empowered to terminate parental rights, none has been endowed with the authority to grant a putative father, or other private litigant, the relief to terminate parental rights. Certainly, the case of *Summers v. Griffith*, 317 Ark. 404, 878 S.W.2d 401 (1994), relied on by the concurring opinion is inapposite, since it is an adoption case involving a *legal* father.

Because the chancery court had no statutory authority to grant David the remedy to seek termination of Betty's parental rights, that court's September 17, 1998, order was void, and should be set aside.

IMBER, J., joins this dissent.