Donald Gene HUDSON *v.* Christina KYLE

02-275                                    101 S.W.3d 202

Supreme Court of Arkansas
Opinion delivered March 20, 2003

*Charles L. Carpenter, Jr.*, for appellant.

One brief only.

Annabelle Clinton Imber, Justice. The issue on appeal is whether a trial court had authority to terminate the parental rights of appellant, Donald Gene Hudson. Testimony showed that Mr. Hudson became involved with appellee, Christina Kyle (then Christina Harvey), when he was thirty-seven and she was seventeen. During their approximately four-year relationship, Ms. Kyle's daughter, K.H., was born. Although DNA

tests proved Mr. Hudson was not K.H.'s biological father, a birth certificate was issued listing him as her father. Mr. Hudson and Ms. Kyle were married in December 1996, when K.H. was fourteen months old. Mr. Hudson never made any attempt to adopt K.H.

Ms. Kyle testified that Mr. Hudson was violent toward her during their relationship both before and after K.H.'s birth, and that violence eventually resulted in a conviction for domestic battery for an incident in which Mr. Hudson beat Ms. Kyle, causing a concussion that kept her off work for weeks. In March 1997, Ms. Kyle filed for divorce, stating there were no children born of the marriage. Nonetheless, in the November 25, 1997 divorce decree issued by the Saline County Chancery Court, Mr. Hudson was adjudicated the legal father of K.H. and was granted reasonable visitation rights. Ms. Kyle never contested or appealed that decree.

In July 1998, Mr. Hudson and Ms. Kyle met at the Benton Police Station so that Mr. Hudson could visit with K.H. During that visit, an incident occurred that led to an allegation of child abuse against Mr. Hudson. An investigator with the Arkansas State Police Family Protection Division made a finding that there was credible evidence of abuse, and the Arkansas Department of Human Services placed Mr. Hudson's name on the Arkansas Child Maltreatment Central Registry. Mr. Hudson appealed DHS's determination and, following a hearing by an administrative law judge, his name was removed from the Registry.

On March 30, 2001, Ms. Kyle filed a motion in the Saline County Chancery Court, asking that the court rescind the divorce decree's finding that Mr. Hudson was K.H.'s legal father, and further asking that all visitation between Mr. Hudson and K.H. be terminated. Mr. Hudson's answer asserted that his status as K.H.'s father was settled in the November 1997 divorce decree, and that he had a right to reasonable visitation with his daughter.

On October 25, 2001, a hearing on Ms. Kyle's motion was held. Pursuant to Act 1736 of 2001, codified at Ark. Code Ann. § 9-10-115 (Repl. 2002), Ms. Kyle asked the court to set aside the finding that Mr. Hudson was K.H.'s legal father, asserting that Ms. Kyle was under duress at the time she signed the decree. Through a child psychotherapist who had counseled K.H. for several years, Ms. Kyle presented evidence that K.H. had been sexually abused by Mr. Hudson. The psychotherapist, Ms. Denise Maples, testi-

fied that K.H. had consistently stated that Mr. Hudson had sexually abused her, and that K.H. had expressed fear of Mr. Hudson on many occasions.

In a letter-order filed on October 29, 2001, the trial court found that Act 1736 of 2001 did not apply and refused to set aside the divorce decree.[1] However, the trial court went on to say that he found Ms. Maples's testimony compelling, and that the allegation of sexual abuse of K.H. by Mr. Hudson had been "established by clear and convincing evidence." The trial court then found that it was in the best interests of K.H. to terminate Mr. Hudson's parental rights. In a written order entered on November 5, 2001, the court terminated Mr. Hudson's parental rights and ordered that the divorce decree's previous orders with regard to Mr. Hudson's child support obligation be withdrawn, stating that he owed no further duty of child support to K.H.

Mr. Hudson asserts four points of error on appeal: (1) the trial court erred in terminating his parental rights because it lacked jurisdiction to do so in an action between private parties; (2) the trial court erred by failing to credit the DHS decision that there was no credible evidence to support a finding of sexual abuse; (3) the trial court erred in finding there was clear and convincing evidence to terminate parental rights; and (4) the trial court erred in failing to grant a new trial. Because we agree that the trial court had no jurisdiction to terminate Mr. Hudson's parental rights, we reverse and remand for a new trial on Ms. Kyle's motion to terminate visitation.

---

[1] The dissent incorrectly states that the trial court "set aside provisions of that divorce decree relating to paternity rights and responsibilities." In fact, the trial court declined to set aside the divorce decree that adjudicated Mr. Hudson to be K.H.'s father. The trial court's order states in pertinent part as follows:

   1. The Decree of Divorce entered on November 25, 1997 shall not be set aside. Act 1736 of 2001 does not apply to this case.

   2. The Plaintiff established by clear and convincing evidence that it is in the best interests of the minor child . . . , for the parental rights of Defendant to be terminated. The Defendant's parental rights to said child are hereby terminated.

   3. The previous Court's orders with regard to Defendant's obligation to pay child support to Plaintiff are hereby withdrawn, and Defendant owes no further duty of support as to [K.H.].

Thus, the paternity statutes cited by the dissent are inapposite.

In its order, the trial court cited no statutory basis upon which to predicate its jurisdiction to enter an order terminating Mr. Hudson's parental rights. Given the situation in which the trial court terminated Mr. Hudson's parental rights, we conclude that no statutory authority conferred jurisdiction upon the trial court to terminate parental rights.[2]

Two Arkansas statutes confer jurisdiction upon a circuit court[3] to terminate parental rights. The first is Arkansas Code Annotated § 9-27-341 of the juvenile code, which states in pertinent part:

> (a)(1)(A) This section shall be a remedy available only to the Department of Human Services or a court-appointed attorney ad litem.
>
> (B) It shall not be available for private litigants or other agencies.
>
> (2) It shall be used only in such cases when the department is attempting to clear a juvenile for permanent placement.

Ark. Code Ann. § 9-27-341 (Repl. 2002). Neither DHS nor an attorney ad litem petitioned the court for termination of Mr. Hudson's parental rights, and DHS was not trying to permanently place K.H.; therefore, § 9-27-341 did not apply.

The second statute that gives a circuit court jurisdiction to terminate parental rights is found at Ark. Code Ann. § 9-9-220, which states in pertinent part:

> (a) With the exception of a duty to pay child support, the rights of a parent with reference to a child, including parental right to control the child or to withhold consent to an adoption, may be relinquished and the relationship of parent and child terminated *in or prior to an adoption proceeding* as provided in this sec-

---

[2] None of the paternity statutes cited by the dissent authorize a trial court to terminate parental rights.

[3] Between the time this case was originally filed with the Saline County Chancery Court in March 2001, and the date of the hearing in October 2001, Amendment 80 to the Arkansas Constitution became effective, designating all courts as "circuit courts." Pursuant to Amendment 80, we no longer have separate "chancery courts" and "circuit courts." The courts have now been merged and carry the designation of "circuit courts." Thus, when Amendment 80 took effect on July 1, 2001, the statutory jurisdiction that allowed chancery courts to terminate parental rights conferred that same jurisdiction upon circuit courts.

tion. The duty of a parent to pay child support shall continue until an interlocutory decree of adoption is entered.

\* \* \* \*

(c) In addition to any other proceeding provided by law, the relationship of parent and child may be terminated by a court order issued *under this subchapter* on any ground provided by other law for termination of the relationship, or on the following grounds:

(1) Abandonment;

(A) A child support order shall provide notice to the non-custodial parent that failure to pay child support or to visit the child for at least one (1) year shall provide the custodial parent with the right to initiate proceedings to terminate the parental rights of the non-custodial parent.

(B) If the notification clause required by subdivision (c)(1)(A) is not in the child support order, the custodial parent, prior to termination of parental rights, shall notify the non-custodial parent that he or she intends to petition the court to terminate parental rights.

(C)(1) The non-custodial parent shall have three (3) months from the filing of the petition to pay a substantial amount of past due payments owed and to establish a relationship with his or her child or children.

(2) Once the requirements under subdivision (c)(1)(C)(1) are met, the custodial parent shall not be permitted to proceed with the adoption nor the termination of parental rights of the non-custodial parent.

(3) The court may terminate parental rights of the non-custodial parent upon a showing that:

(i) Child support payments have not been made for one (1) year or the non-custodial parent has not visited the child in the preceding year and the non-custodial parent has not fulfilled the requirements of subdivision (c)(1)(C)(1); *and*

(ii) It would be in the best interest of the child to terminate the parental relationship.[4]

---

[4] Contrary to the dissent's limited citation of subsection (c)(1)(C), a court may terminate parental rights under (3)(ii) only in conjunction with (3)(i). Subpart (3)(i) does not apply because the record shows that Mr. Hudson paid his child support payments and attempted to visit K.H.

(2) Neglect or abuse . . .

(3) That in the case of a parent not having custody of a child, his consent is being unreasonably withheld contrary to the best interest of the child.

* * * *

(e) A petition for termination of the relationships of parent and child *made in connection with an adoption proceeding* may be made by:

(1) Either parent if termination of the relationship is sought with respect to the other parent;

(2) The petitioner for adoption, the guardian of the person, the legal custodian of the child, or the individual standing in parental relationship to the child or the attorney ad litem for the child;

(3) An agency; or

(4) Any other person having a legitimate interest in the matter.

Ark. Code Ann. § 9-9-220 (Repl. 2002) (emphasis added). Section 9-9-220 is part of the Arkansas Uniform Adoption Code, and sets out several grounds for termination of parental rights, but only in connection with an adoption proceeding. Subsection (a) deals with termination of parental rights in an adoption proceeding by voluntary relinquishment of those rights by the parent. Subsection (c) outlines some of the grounds for involuntary termination of parental rights, but because of the language "under this subchapter," it is apparent that this termination is, once again, only appropriate when an adoption is contemplated. This is clarified by subsection (e), which gives private litigants and others the right to petition the court for termination of parental rights, but limits this right to petitions "made in connection with an adoption proceeding."

In the instant case, the record shows that Ms. Kyle had at some point requested Mr. Hudson's consent to allow her current husband to adopt K.H., but Mr. Hudson refused to give that consent. The record also shows that Mr. Hudson has paid child support for K.H. and has on several occasions given Ms. Kyle financial assistance over and above the child-support amount. At the time the motion at issue here was filed, there was no adoption

proceeding in the works. Moreover, Ms. Kyle's motion for cessation of visitation does not reflect that an adoption proceeding is her reason for the motion. For these reasons, the circuit court did not have jurisdiction to terminate Mr. Hudson's parental rights under § 9-9-220.

In addition to these two sections of the Arkansas Code, Mr. Hudson cites one other section, Ark. Code Ann. § 16-13-304, as possibly giving the circuit court jurisdiction to terminate parental rights, but notes that the subsection giving that jurisdiction also required the appointment of a guardian ad litem prior to the termination, as follows:

> (d)(1) Chancery courts shall have the power to terminate parental rights in matters properly before the chancery court, except when the parties to the chancery court action are also parties to a juvenile division of chancery court action; then the juvenile division of chancery court shall have exclusive jurisdiction over termination of parental rights.
>
> (2) In all proceedings involving the termination of parental rights before the chancery court, the court shall appoint a guardian ad litem to represent the best interest of the juvenile and to advocate for the juvenile's articulated wishes.

Ark. Code Ann. § 16-13-304(d) (Repl. 1999).

While this section of the Code was still in effect on March 30, 2001, when Ms. Kyle filed her motion to cease Mr. Hudson's visitation, the Arkansas General Assembly, on March 28, 2001, passed Act 1153 of 2001 to repeal § 16-13-304(d). This repeal was effective in August 2001. The original motion to cease visitation made no mention of terminating Mr. Hudson's parental rights, and § 16-13-304(d) had already been repealed when the matter came up for the first time during the October 2001 hearing on the motion. Thus, this subsection could not have conferred jurisdiction for termination of Mr. Hudson's parental rights.

Because no statutory authority conferred jurisdiction on the court to terminate Mr. Hudson's parental rights,[5] this case is

---

[5] Likewise, Ark. Code Ann. § 9-13-101 (Repl. 2002) is inapposite and did not confer jurisdiction on the trial court to terminate Mr. Hudson's parental rights. That statute deals with child custody and visitation issues and does not address the termination of parental rights. In order to prevent confusion, we hereby overrule the decision of the

reversed and remanded for a new trial on the motion to terminate visitation.

Reversed and remanded for new trial.

ARNOLD, C.J., and THORNTON, J., dissent.

RAY THORNTON, Justice, dissenting. The majority opinion holds that a circuit court established by Amendment 80 to our constitution does not have jurisdiction to terminate the parental rights of Mr. Hudson, who is not the biological or adoptive father of the child, K.H. Mr. Hudson's only relationship to K.H.[1] is based on the fact that for a short time, more than a year after the child was born, Mr. Hudson was married to the child's mother, and that the decree of divorce referred to him as the child's father.[2]

The trial court heard evidence that the brief marriage of Mr. Hudson to Ms. Kyle was violent, with physical attacks by Mr. Hudson sending his wife to the hospital for an extended period of time before she filed for divorce. Further, the trial court found that Mr. Hudson's relationship with the child was abusive. The trial court quoted with approval evidence that K.H. had been sexually abused by Mr. Hudson and found that the best interest of the child required termination of Mr. Hudson's parental rights.

Exercising its jurisdiction over the divorce decree handed down in 1997, the trial court set aside provisions of that divorce decree relating to paternity rights and responsibilities. Specifically, the trial court ordered that provisions of the divorce decree imposing upon Mr. Hudson an obligation to pay child support be set aside, and ruled that Mr. Hudson owes no further duty of support to K.H. This exercise of jurisdiction to modify the 1997 divorce decree is not challenged.[3]

---

Arkansas Court of Appeals in *Office of Child Support v. Lawrence*, 57 Ark. App. 300, 944 S.W.2d 566 (1997), to the extent that it holds otherwise.

[1] A DNA test of K.H. and Mr. Hudson excluded Mr. Hudson as K.H.'s parent. The test was performed before the marriage.

[2] There is no showing that the trial court granting the divorce was cognizant of the results of the DNA test.

[3] The majority asserts that the trial court did not exercise its jurisdiction to modify the 1977 divorce decree, and claims that the dissent is in error in stating that the trial court "set aside" provisions of that divorce decree.

The trial court order reads in pertinent part as follows:

Mr. Hudson now appeals the order of the trial court in a one-brief appeal. We need not speculate as to why the prevailing parties did not brief the issue on appeal, but it seems that a good brief might have helped avoid today's untenable holding by the majority, from which I most respectfully dissent.

Mr. Hudson's first point on appeal is that the trial court lacked jurisdiction to terminate his parental rights, and the majority writes, "[W]e agree that the trial court had no jurisdiction to terminate Mr. Hudson's parental rights . . . [.]" Further, we are told by the majority that, notwithstanding the fact that a circuit court has all jurisdiction formerly invested by the constitution and laws of Arkansas in circuit, chancery, probate, and juvenile courts, as well as part of the constitutional jurisdiction formerly assigned to county courts over juvenile and illegitimacy proceedings, that this circuit court does not have jurisdiction to terminate parental rights of a noncustodial, non-biological, and nonadoptive father in the best interest of the child.

The majority also proceeds *sua sponte* to reach out and over-rule a decision of our court of appeals' holding in *Office of Child Support Enforcement v. Lawrence,* 57 Ark. App. 300, 944 S.W.2d 566 (1997), which provides:

> [T]he authority to terminate parental rights is specifically granted to the juvenile and probate courts. *See* Ark. Code Ann. §§ 9-9-220, 9-27-341 (1987). However, in the context of a divorce, where child custody is at issue, the chancellor is vested with broad discretion to make decisions that are in the best interests of the minor child. *See* Ark. Code Ann. § 9-13-101 (1987).

*Lawrence, supra.*

This eminently correct statement of law by the court of appeals falls victim to the confusion attending this one-brief appeal. Presumably the majority's opinion will also require rever-

---

3. The previous Court's orders with regard to Defendant's obligation to pay child support to Plaintiff are hereby withdrawn, and Defendant owes no further duty of support as to [K.H.].

The majority contends that the trial court's modification of the earlier divorce decree by ordering that appellant's obligations to pay child support "are hereby withdrawn" is different from setting aside such obligations.

The fine distinction between withdrawing an order and setting it aside eludes me. Both require the exercise of jurisdiction over the previous divorce decree.

sal of our decision in *Patterson v. Isom*, 338 Ark. 234, 992 S.W.2d 792 (1999), where Patterson, the father, filed a petition for change in custody, and in response, Judkins, the mother, filed a petition for paternity testing to determine that Patterson was not the biological father of the child. We held: "The chancery court had exclusive jurisdiction under § 9-10-101(a)(2) to determine the issue of paternity." *Id.* We reversed the decision to the contrary by the juvenile court. *Id.* Regardless of the disposition of that case, it is beyond question that the circuit court does indeed have jurisdiction to determine the matter.

The majority may also be required to overturn our decision in *Parker v. Sebourn*, 351 Ark. 453, 95 S.W.3d 762 (2003), handed down less than a month ago where we held that a chancery court had subject-matter jurisdiction to terminate parental rights of a biological mother to her own child. *Id.*

The crux of the argument in *Parker, supra,* was whether jurisdiction was in the chancery court or in the juvenile court. It was not disputed that subject-matter jurisdiction was in one or the other of those two courts. *Id.*[4] It is clear that the jurisdiction of both these courts, as well as that of the probate court and the circuit courts, are now conferred by Amendment 80 upon the circuit court in the case under advisement.

We only need look to our constitution to become informed about jurisdiction. Section 6(a) of Amendment 80 confers upon circuit courts "jurisdiction of all justiciable matters not otherwise assigned pursuant to the constitution." Amendment 80, section 6(a). Section 19(B) of Amendment 80 confers "to circuit courts jurisdiction over all matters previously cognizable by circuit, chancery, probate, and juvenile courts" and other related provisions.

I am bewildered by the majority's holding that issues of paternity and the termination of parental rights are not justiciable matters assigned to the circuit court by the constitution. If this constitutional grant of jurisdiction requires statutory language to become effective, plenty can be found, and perhaps would have been cited if we had the other side of the issue briefed in the matter before us.

---

[4] The statutory basis upon which *Parker, supra* was decided has been replaced by Ark. Code Ann. § 16-13-304(b) (Supp. 2001), which is set out below.

For example, Ark. Code Ann. § 16-13-304 confirms jurisdiction in chancery (now circuit) courts and provides in pertinent part:

> (a) Chancery court shall have original jurisdiction in all matters in equity as fully as that exercised by the circuit courts of this state in counties where no separate chancery courts have been established prior to April 27, 1903.
>
> (b) Notwithstanding the provisions of the Arkansas Juvenile Code of 1989, § 9-27-301 *et seq.*, or any other enactment which might be interpreted otherwise, the chancery court or any division of *chancery court shall have jurisdiction for all cases and matters relating to paternity.*

*Id.* (emphasis added). This statute resonates with Amendment 80's grant of jurisdiction for the trial court to hear paternity cases.[5]

Turning to other statutory resonance with the constitutional grant of jurisdiction, it is notable that Arkansas Code Annotated § 9-9-220(c) (Repl. 2002), relating to adoption, provides in pertinent part:

> (c) In addition to any other proceeding provided by law, the relationship of parent and child may be terminated by a court order issued under this subchapter on any ground *provided by other law* for termination of the relationship, *or on the following grounds*:
>
> \* \* \*
>
> (3) The court may terminate parental rights of the non-custodial parent upon a showing that:
>
> (ii) It would be in the best interest of the child to terminate the parental relationship.

*Id.* (emphasis added).

It should·be noted that this grant of jurisdiction does not depend upon the pendency of an adoption proceeding. Arkansas Code Annotated § 9-9-220(a) states in pertinent part that "parental right[s] to control the child or to withhold consent to an adoption may be relinquished and the relationship of parent and child terminated *in or prior to an adoption proceeding* as provided in

---

[5] On March 28, 2001, a later section of this statute expressing limitations upon the exercise of authority to terminate parental rights, as set out in subparagraph (d), was repealed. The repealing statute did not address the grant of jurisdiction to decide issues relating to paternity as set out in Ark. Code Ann. § 16-13-304(b).

this section." *Id.* (emphasis added). The plain language of the statute provides jurisdiction for termination of parental rights *before* an adoption proceeding commences.

Not only does the circuit court have authority to determine parental rights under Ark. Code Ann. § 16-13-304(b) and under Ark. Code Ann. § 9-9-220(c), the circuit court has jurisdiction to terminate parental rights as provided by Ark. Code Ann. § 9-10-115(d). We held in *Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259 (1998):

> By its terms, § 9-10-115(d) (Supp. 1995) directs the chancellor, upon scientific proof that the "adjudicated or presumed father" is not the "biological father," to do the following two things: (1) set aside a previous finding of paternity, *and* (2) "relieve the adjudicated or presumed father of any future obligation of support or any back child support as authorized under § 9-14-234 as of the date of entry of the order of modification." Thus, an "adjudicated father" who proves that he is not the "biological father" may receive two forms of relief. *He is entitled to have the paternity judgment set aside and* to be relieved of future child-support obligations.

*Littles, supra* (emphasis supplied).

As previously stated, it is not clear whether the results of DNA testing establishing that Mr. Hudson is not the biological parent of K.H. have ever been considered by the court. It remains unclear from the record in this one-brief case what principles of law or statutory authority the trial court relied upon. But while the abstract and brief before us do not disclose the basis upon which the trial court proceeded, no adequate showing was made that the trial court lacked jurisdiction to make a decision.

In the matter before us, the trial court was reviewing a divorce decree, as it had jurisdiction to do, and it set aside the provisions of the divorce decree relating to child support. It noted the existence of Ark. Code Ann. § 9-10-115(d)(1) that provides in pertinent part that

> a person may challenge a paternity establishment pursuant to a voluntary acknowledgment of paternity or an order based on an acknowledgment of paternity only upon an allegation of fraud, duress, or material mistake of fact.

*Id.*

Notwithstanding whether the trial court based its order setting aside provisions of the divorce decree upon Ark. Code Ann. § 9-10-115(d)(1), the trial court determined that there was no proof of duress. However, that finding did not deprive the trial court of jurisdiction. Indeed the trial court exercised its jurisdiction in setting aside portions of the divorce decree. The trial court was also appraised that an effort to adopt K.H. had been frustrated by Mr. Hudson's refusal to consent, and the trial court clearly had jurisdiction to inquire further into the showing of the DNA evidence. For the purpose of determining jurisdiction, it does not matter whether the trial court correctly or incorrectly interpreted the statutes, or correctly weighed the evidence. It is clear to me that the trial court had jurisdiction of the subject matter of paternity rights.

Mr. Hudson does not make an argument that the trial court lacked jurisdiction because there was no grant of jurisdiction by our constitution. He cites no authority for such a proposition, and presents no persuasive argument. Neither does Mr. Hudson address the issue whether the circuit court has jurisdiction formerly accorded to juvenile and probate courts. His contention is predicated upon the incorrect assumption that the only possible source of jurisdiction was that granted to DHS under the provisions of Ark. Code Ann. § 9-27-341, which does not confer jurisdiction to terminate parental rights upon private litigants. However, no one contends that the trial court relied upon that statute for jurisdiction or that the trial court acted under that statute.

Mr. Hudson did not address the question whether the trial court had jurisdiction pursuant to other laws. In a departure from precedent, the majority proceeds to review issues and statutes not raised by appellant below or in his brief in order to reverse the trial court. I cannot agree with this procedure or with the result.

I respectfully dissent. I am authorized to state that Chief Justice ARNOLD joins in this dissent.