Donald Gene HUDSON Jr. *v.* Christina (Harvey) KYLE

05-509                                                                     229 S.W.3d 890

Supreme Court of Arkansas
Opinion delivered February 23, 2006

---

*Brown & McKissic, LLP*, by: *Gene E. McKissic*, for appellant.

No response.

Tom Glaze, Justice. Appellant Donald Gene Hudson is the ex-husband of appellee Christina Kyle; the two were married in December of 1996, but Ms. Kyle filed for divorce on April 29, 1997. In her divorce complaint, Ms. Kyle alleged that there were no children of the marriage. Mr. Hudson filed a counterclaim in which he alleged that a minor child, K.H., was "born to the parties," and asked that he be "established as the father of the child" and that

the trial court award joint custody of the child to both him and Ms. Kyle. The Saline County Chancery Court entered a divorce decree on November 25, 1997, granting Ms. Kyle an absolute divorce from Mr. Hudson; adjudicating Mr. Hudson to be K.H.'s father; setting child support at $31.00 per week; and awarding Mr. Hudson "reasonable visitation" with K.H.

On March 30, 2001, Ms. Kyle filed a motion asking the trial court to issue an order stopping visitation between Mr. Hudson and K.H. In her motion, she alleged that (1) Mr. Hudson had been tried for the sexual abuse of K.H., (2) DNA testing showed that Mr. Hudson was not K.H.'s biological father, and (3) Mr. Hudson was unfit to exercise visitation with K.H. Ms. Kyle's motion also asked the court to "rescind the finding that [Mr. Hudson] is the legal father" of K.H. After an October 25, 2001, hearing, the trial court issued a letter order on October 29, 2001. In that letter order, the trial court noted evidence that supported a conclusion that K.H. had been sexually abused, and found that it was in K.H.'s best interest that Mr. Hudson's parental rights be terminated. The court's order to that effect was entered on November 5, 2001.

Mr. Hudson appealed the trial court's ruling, arguing, among other things, that the trial court lacked jurisdiction to terminate his parental rights. This court agreed, concluding that termination-of-parental-rights proceedings had not been properly brought under the applicable statutes. *Hudson v. Kyle*, 352 Ark. 346, 351, 101 S.W.3d 202, 206 (2003) (*Hudson I*). Because no statutory authority conferred jurisdiction on the court to terminate Mr. Hudson's parental rights, this court reversed and remanded the case for a new trial on the motion to terminate visitation. *Hudson*, 352 Ark. at 352-53.

After this court's decision, Mr. Hudson filed a petition to reinstate his parental rights and to establish visitation. In September of 2003, the trial court, finding that a psychological evaluation of all involved parties would be beneficial, ordered Mr. Hudson, Ms. Kyle, and K.H. to submit to psychological evaluations and to provide the court with a copy of the report resulting from those evaluations. Dr. Richard Livingston conducted the evaluations and submitted a report on January 12, 2005.

After receiving the report, the trial court conducted a hearing on January 31, 2005. Following the hearing, the court issued another letter opinion in which it denied Mr. Hudson's request for visitation with K.H. The court again found that "not

only would it not be in K.H.'s best interests for visitation to resume . . . , but that it would be extremely harmful to her for such visitation to take place after four years." The court's order reflecting these findings was entered on March 1, 2005, and Mr. Hudson filed a timely notice of appeal on March 9, 2005.

In his first argument on appeal, Mr. Hudson argues that the trial court's refusal to award him visitation rights was clearly erroneous, and that the trial court disregarded the evidence before it in reaching its decision. The fixing of visitation rights is a matter that lies within the sound discretion of the trial court. *Davis v. Davis*, 248 Ark. 195, 451 S.W.2d 214 (1970); *Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003). The main consideration in making judicial determinations concerning visitation is the best interest of the child. *Brown v. Brown*, 76 Ark. App. 494, 68 S.W.3d 316 (2002).

Further, this court has traditionally reviewed matters that sounded in equity *de novo* on the record with respect to fact questions and legal questions. *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). We have stated repeatedly that we would not reverse a finding by a trial court in an equity case unless it was clearly erroneous. *Id.* We have also stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* In resolving the clearly erroneous question, we must give due regard to the opportunity of the chancery court to judge the credibility of witnesses. *Bearden v. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001). Additionally, we give great weight to the trial judge's personal observations; this is so because there are no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carries a greater weight than those involving the custody of minor children. *See Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001).

At the January 31, 2005, hearing, Ms. Kyle testified that she had not permitted Mr. Hudson to see K.H. since the prior court order, and in that time, K.H. had been making straight A's in school and was having no discipline problems. Mr. Hudson next called the pastor at his church, David Burge Emerson, who testified that he had known Mr. Hudson for two years, and during that time, Mr. Hudson had attended church regularly and taught Sunday School. In addition, Pastor Emerson stated that Mr.

Hudson conducted a third- or fourth-grade ministry, and that there had been no problems with Mr. Hudson's conduct with the children. Mr. Hudson then called his mother, Helen Hudson, to the stand; she testified that her son lived with her, and that, if visitation were granted, she had an extra bedroom ready for K.H.

Mr. Hudson testified next, stating that he wanted visitation, that K.H. would have her own privacy and accommodations in his mother's home, and that he would "love her as a father should a daughter." Mr. Hudson further stated that he was prepared to abide by any rules of visitation, guidelines, or restrictions that the court should choose to place on that visitation. Mr. Hudson testified that he was an assistant manager at Sam's Wholesale Club in Little Rock, and was financially prepared to support K.H.

Ms. Kyle returned to the stand to present her own case; she stated that she had remarried, and that K.H. called her husband "daddy." When asked why she believed it was not in K.H.'s best interest to have visitation with Mr. Hudson, Ms. Kyle stated that K.H. suffered from post-traumatic stress disorder, and that her condition had changed for the worse since Mr. Hudson tried to reintroduce himself into her life. Ms. Kyle noted that K.H. had been a straight-A student, but when she began speaking to the psychologist about Mr. Hudson, her grades dropped from A's to C's, and she began having "night traumas again" and "acting out toward her sister."

The trial court also received a report from Dr. Livingston, as mentioned above. Dr. Livingston's report reflects the following concerning K.H.:

> The child has attention deficit hyperactivity disorder and has had some periods of fearfulness in the past, but shows no signs of more severe psychiatric disorder, specifically or post-traumatic stress disorder, nor any signs or symptoms that specifically suggest sexual abuse. Her beliefs about Mr. Hudson mirror her mother's.

Regarding Mr. Hudson, Dr. Livingston opined that Mr. Hudson showed no signs or symptoms of psychiatric disorder, and that he was "the most psychologically stable of the lot." Dr. Livingston also stated a belief that there was "virtually no risk of Mr. Hudson sexually abusing a child." Accordingly, Dr. Livingston concluded that Mr. Hudson "should have the opportunity" for visitation with K.H.

In the trial court's letter opinion, the court denied Mr. Hudson's request for visitation, writing in part as follows:

> All I know about Mr. Hudson, Ms. Kyle, and [K.H.] came from evidence presented in court. . . .

> In his argument, [Mr. Hudson's attorney] stated that Mr. Hudson has always successfully defended himself against allegations of abuse of his former wife and child, and that is not true.

> In the appeal to the Arkansas supreme court, [the court] stated "the trial court went on to say that he found [K.H.'s psychotherapist's] testimony compelling, and that the allegations of sexual abuse of [K.H.] by Mr. Hudson had been "established by clear and convincing evidence." That case was reversed because of the lack of statutory authority to terminate parental rights, not because of a lack of evidence to terminate Mr. Hudson's contact with the child.

> I find that not only would it not be in [K.H.'s] best interest for visitation to resume with her father, but that it would be extremely harmful to her for such visitation to take place after four (4) years. This is not a case of rewarding a custodial parent who withholds visitation without justification. There was ample justification presented in this case to withhold visitation.

On appeal, Mr. Hudson argues that the trial court disregarded the opinions and findings of Dr. Livingston in arriving at its decision. Further, Mr. Hudson contends that the trial court chose to rely not only on evidence presented at the instant hearing, but to rely on a finding made in the prior 2001 proceeding. Mr. Hudson urges that the trial court's 2001 decision was reversed by this court, and thus, the trial court's citation to its own prior finding as a basis for the present decision was erroneous.

We first note that, when this court reversed the trial court's 2001 order terminating Mr. Hudson's parental rights, it did not reach the merits of the court's decision; rather, this court held that the trial court was without statutory authority to terminate Mr. Hudson's parental rights. Notably, in *Hudson I,* this court pointed out that two statutes confer jurisdiction upon a circuit court to terminate parental rights — Ark. Code Ann. § 9-27-341 (Repl. 2002), and Ark. Code Ann. § 9-9-220 (Repl. 2002) — and neither of those statutes applied to the proceedings during which the trial court terminated Mr. Hudson's parental rights. *See Hudson,* 352 Ark. at 350-51. The *Hudson I* court made no ruling one way or the other on the merits of the case or the wisdom of the trial court's reasons for terminating parental rights.

Mr. Hudson's argument appears to be premised on his contention that the trial court erred in believing some witnesses more than other witnesses. This court and the court of appeals have consistently held that, in order to conclude that a trial judge made a clearly erroneous decision, we must be left with a definite and firm conviction that a mistake has been made. *See Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). In resolving the clearly erroneous question, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Johnson v. Arkansas Dep't of Human Servs.*, 78 Ark. App. 68, 82 S.W.3d 178 (2002). Additionally, as mentioned above, this court has noted that, in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. *Dinkins, supra; Ullom v. Arkansas Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000). Where there are inconsistences in the testimony presented at a termination hearing, the resolution of those inconsistencies is best left to the trial judge, who heard and observed these witnesses first-hand. *Dinkins, supra.*

In this case, the trial court, which was familiar with the case and the parties, clearly considered Ms. Kyle's testimony, and specifically her concerns for her daughter's mental health, to be more credible and deemed that her testimony should be given more weight. This was the trial court's prerogative, and we cannot say that the court's decision was clearly erroneous.

In his second point on appeal, Mr. Hudson argues that the trial court erred by relying on findings of fact from the 2001 proceedings as a basis for denying Mr. Hudson's request for visitation. We see no error in the trial court's revisiting of facts received in a prior trial of this matter. *See Trout v. Arkansas Dep't of Human Servs.*, 359 Ark. 283, 197 S.W.3d 486 (2004) (concluding, in a termination of parental rights case, that it was appropriate for the trial judge to consider the history of the mother's appearances before him in determining whether she could be trusted to continue making positive steps; this court cited the trial court's experience with the case in concluding that the trial court did not err in its decision to terminate the mother's parental rights).[1]

---

[1] We also note that traditionally chancery cases are frequently remanded for the trial court to take additional evidence. *See, e.g., Huffman v. Fisher*, 343 Ark. 737, 38 S.W.3d 327

Mr. Hudson further contends that the trial court relied on old allegations of sexual abuse presented in the 2001 hearing as grounds for denial of visitation rights. He further notes that the trial court did not mention that the Arkansas Department of Human Services conducted a hearing on the allegations of sexual abuse at the time those allegations were made, and an administrative law judge (ALJ) determined that the sexual abuse allegations were unfounded. Mr. Hudson then states that the findings and rulings of the ALJ were *res judicata* on the issue of sexual abuse of K.H., and it was improper for the trial court to rely on its own findings from the 2001 proceedings as a basis for denying visitation.

The only citation Mr. Hudson provides for his claims about the ALJ's determinations is this court's *Hudson I* opinion; there, this court stated the following:

> In July 1998, Mr. Hudson and Ms. Kyle met at the Benton Police Station so that Mr. Hudson could visit with K.H. During that visit, an incident occurred that led to an allegation of child abuse against Mr. Hudson. An investigator with the Arkansas State Police Family Protection Division made a finding that there was credible evidence of abuse, and the Arkansas Department of Human Services placed Mr. Hudson's name on the Arkansas Child Maltreatment Central Registry. Mr. Hudson appealed DHS's determination and, following a hearing by an administrative law judge, his name was removed from the Registry.

*Hudson*, 352 Ark. at 347.

■ However, there is nothing in the record of the instant case that relates to the proceedings before the ALJ: there is no transcript of the hearing before the ALJ, nor does the record contain a copy of the ALJ's decision. This court has repeatedly and consistently stated that matters outside of the record will not be considered on appeal, and it is the appellant's burden to bring up a record sufficient to demonstrate that the trial court was in error. *See Dodge v. Lee*, 352 Ark. 235, 100 S.W.3d 707 (2003); *Estate of Seay v. Quinn*, 352 Ark. 113, 98 S.W.3d 821 (2003). Where the

(2001) (stating that, upon remand, the case was "tried again with the presentation of additional evidence and testimony"); *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994) (noting that "further proceedings on remand should include hearing additional pertinent evidence that the parties may offer") (rev'd on other grounds).

appellant fails to meet its burden, this court has no choice but to affirm the trial court. *See Warnock v. Warnock*, 336 Ark. 506, 988 S.W.2d 7 (1999). Accordingly, we cannot consider Mr. Hudson's arguments as they relate to the alleged findings of the ALJ, and we must affirm on this point.