2012 Ark. App. 129

**David Brent MORRIS, Appellant**

v.

**Paula DICKERSON, Appellee.**

No. CA 11–806.

Court of Appeals of Arkansas.

Feb. 8, 2012.

Brent Maurice Langdon, Texarkana, TX, and Melissa Gale McPherson, Fort Smith, for appellant.

Carey Brian Meadors, Fort Smith, for appellee.

RAYMOND R. ABRAMSON, Judge.

Appellant David Brent Morris, the father of B.M., brings this appeal from an order of the Polk County Circuit Court establishing visitation between B.M. and his maternal grandmother, appellee Paula Dickerson. Morris argues that there was insufficient evidence to support the circuit court's award of grandparent visitation. We agree and reverse.

B.M. was born on October 24, 2002. His mother Amber died of a stroke in November 2007. After Amber's death, Dickerson helped Morris care for B.M. It is disputed how much time B.M. stayed with Dickerson, but both parties agreed it was substantial and that Dickerson spent a significant amount of time with B.M., both before and after Amber's death. In fact, although Dickerson lived and worked in Van Buren, she also maintained a second home closer to B.M.

However, in 2009, Morris moved away and began dating his current wife, Ashlyn. He also began to limit the amount and extent of Dickerson's visits. Morris claimed that the visitation lessened because he had gained more stability and his need to rely on others to help care for B.M. decreased. There was also testimony that Dickerson had overstepped her bounds in her relationship with B.M. and Morris[1] and that the visits had become

1. There was evidence that Dickerson believed that B.M. suffered from asthma, had taken him to the doctor without Morris's permission, and had obtained asthma medication for

stressful for B.M.[2]

In September 2009, Dickerson filed a petition for grandparent visitation rights in Sevier County, and the parties subsequently agreed to a temporary order of visitation. In March 2010, Dickerson non-suited her petition for visitation.

In June 2010, Dickerson once again filed a petition to establish grandparent visitation, this time in Polk County. In her petition, she alleged that Morris had, without justification, begun to severely limit her visitation with B.M. She alleged that she had previously filled the role of mother to B.M. and requested visitation commensurate with that of a non-custodial parent. Morris moved to dismiss the petition, stating that there was no allegation that he was an unfit parent or that he had completely denied Dickerson visitation with B.M.

Several hearings were held, and temporary orders of visitation were entered. On February 17, 2011, the circuit court issued a letter opinion granting permanent visitation rights to Dickerson. In doing so, the trial court stated the following:

As a grandparent visitation case there is a rebuttable presumption that the parent's decision to deny or limit visitation is in the best interest of the child. To rebut this presumption the petitioner-grandparent must establish that the petitioner has established a significant and viable relationship with the child and that visitation is in the best interest of the child.

The first of these is conceded by Respondent. The grandmother had, and continues to have, a significant and viable relationship with the child. Thus, the issue for the court is whether the visitation is in the best interest of the child. The statute sets forth the three elements relating to this requirement. Again, the Respondent concedes the first of these elements (capacity to give the child love, affection and guidance) except with regard to "guidance" only making some vague allegation of the grandmother's "questionable" guidance. The petitioner is a well educated, firmly established educator with strong values and an intense devotion to this child. She certainly has the *capacity* to give the child love, affection and guidance and, in fact, does so in a commendable fashion.

The second element is that the loss of relationship is likely to harm the child. Here the basis of the Respondent's argument is that there will be no loss of relationship in the absence of a court order. In fact, the Respondent assures the court and the petitioner that some visitation will continue. While this is a commendable position the statute focuses on both "denying or limiting visitation" The petitioner's argument is that without a court order, the Respondent will place severe limits on the visitation and this would be a "loss" in the relationship. There was evidence which indicated that the Respondent had in absence of court orders, drastically reduced the visitation permitted between the child and grandmother. Given the close relationship between the child and grandmother, this loss can only be harmful.

B.M. and provided it to the school. There was also evidence that she repeatedly called and texted Morris and Ashlyn and became upset if they did not immediately return her calls.

2. There was evidence that B.M. would become stressed and withdrawn prior to his visits with Dickerson and that he began to have stomach problems that Morris associated with his visits.

The last element relates to the willingness of the petitioner to cooperate if visitation is allowed. Here the petitioner's evidence is strongest. Not only has the petitioner totally cooperated in the past she indicated her willingness to fully cooperate in the future. Respondent's only argument is that she "wants to control." However, it is clear that petitioner will follow whatever orders the court might enter. She has, in fact, gone overboard to work with the Respondent in all aspects of visitation. This will, no doubt, continue.

The court then found that visitation is in the child's best interest and provided a detailed visitation schedule. In doing so, the court specifically discounted Morris's claims that Dickerson was responsible for B.M.'s "stomach aches" and that she was overusing prescription medication. A formal order granting visitation was filed on April 21, 2011, reflecting the court's ruling. Morris filed a timely notice of appeal.

Morris argues that the circuit court erred in granting Dickerson's petition for grandparent visitation. He contends that Dickerson failed to establish by a preponderance of the evidence that (1) she had the capacity to give B.M. love, affection, and guidance, given her bizarre behavior and the alarming number of prescription medications she had been prescribed; (2) there was a loss of relationship, given that Morris had not precluded visitation altogether, or evidence that limiting visitation had caused B.M. harm; or (3) she was willing to cooperate with Morris if visitation were allowed.

 The fixing of visitation rights is a matter that lies within the sound discretion of the circuit court. *See Hudson v. Kyle*, 365 Ark. 341, 229 S.W.3d 890 (2006). The main consideration in making judicial determinations concerning visitation is the best interest of the child. *See id.* Further, our appellate courts have traditionally reviewed matters that sounded in equity *de novo* on the record with respect to factual questions and legal questions. *See id.* We have stated repeatedly that we would not reverse a finding by a circuit court in an equity case unless it was clearly erroneous. *See id.* We have also stated that a finding of fact by a circuit court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *See id.* In resolving the clearly erroneous question, we must give due regard to the opportunity of the court to judge the credibility of witnesses. *See id.* We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *See Bethany v. Jones,* 2011 Ark. 67, 378 S.W.3d 731. This deference to the circuit court is even greater in cases involving child custody or visitation, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *See id.*

 Dickerson sought grandparent-visitation rights under Arkansas Code Annotated section 9–13–103(b)–(e) (Repl.2009), which provides in pertinent part:

(b) A grandparent or great-grandparent may petition a circuit court of this state for reasonable visitation rights with respect to his or her grandchild or grandchildren or great-grandchild or great-grandchildren under this section if:

(1) The marital relationship between the parents of the child has been severed by death, divorce, or legal separation;

. . . .

(c)(1) There is a rebuttable presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child.

(2) To rebut the presumption, the petitioner must prove by a preponderance of the evidence the following:

(A) The petitioner has established a significant and viable relationship with the child for whom he or she is requesting visitation; and

(B) Visitation with the petitioner is in the best interest of the child.

(d) To establish a significant and viable relationship with the child, the petitioner must prove by a preponderance of the evidence the following:

(1)(A) The child resided with the petitioner for at least six (6) consecutive months with or without the current custodian present;

(B) The petitioner was the caregiver to the child on a regular basis for at least six (6) consecutive months; or

(C) The petitioner had frequent or regular contact with the child for at least twelve (12) consecutive months; or

(2) Any other facts that establish that the loss of the relationship between the petitioner and the child is likely to harm the child.

(e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner must prove by a preponderance of the evidence the following:

(1) The petitioner has the capacity to give the child love, affection, and guidance;

(2) The loss of the relationship between the petitioner and the child is likely to harm the child; and

(3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed.

In *In re Adoption of J.P.*, 2011 Ark. 535, 385 S.W.3d 266, the Arkansas Supreme Court reviewed the history of Arkansas's grandparent-visitation statute and observed that our statute "gives the parent's decision presumptive or special weight in deciding whether grandparent visitation is in the best interest of the child." *See* Ark.Code Ann. § 9–13–103(c)(1). In order to rebut that presumption, the grandparents were required to prove, by a preponderance of the evidence, both a significant and viable relationship with the child and that visitation with him was in his best interest. *See* Ark.Code Ann. § 9–13–103(c)(2). To prove visitation was in the child's best interest, the grandparents were required to prove, by a preponderance of the evidence, that (1) they had the capacity to give the child love, affection, and guidance; (2) the loss of the relationship between them and the child was likely to harm him; and (3) they were willing to cooperate with the parent if visitation with the child was allowed. *See* Ark.Code Ann. § 9–13–103(e).

In that case, the court upheld the circuit court's findings that the grandparents had proved by a preponderance of the evidence that they had the capacity to give the child love, affection, and guidance, and that they were willing to cooperate with the parent if visitation with the child was allowed. However, the court held that the circuit court's finding that the grandparents had proved by a preponderance of the evidence that the loss of the relationship between them and the child was likely to harm the child was clearly erroneous.

The court found that, in order to establish the loss of a relationship, evidence must be presented demonstrating that the relationship between the grandparents and grandchild "had been lost or would be lost." However, because there was indeed a relationship in existence that, while limit-

ed, had not been lost, and as there was no evidence presented that the relationship would be lost, the grandparents' petition for visitation was premature. *In re Adoption of J.P., supra* at 17, 385 S.W.3d 266 (citing *Hollingsworth v. Hollingsworth*, 2010 Ark. App. 101, 377 S.W.3d 313 (holding that where the relationship between a grandfather and grandson had not been lost because visitation had only been curbed and not denied, the circuit court did not abuse its discretion in denying the grandfather's petition for grandparent visitation)). Simply put, visitation was not denied to the grandparents, and their relationship with the child had not been lost. *Id.* Thus, the supreme court reversed and remanded, holding that the circuit court clearly erred in finding that the grandparents rebutted the statutory presumption and abused its discretion in granting them grandparent and great-grandparent visitation under section 9-13-103

This case is factually similar. Here, as in *In re J.P.*, Dickerson failed to prove that her relationship with B.M. had been or would be lost—visitation had only been limited, not altogether denied. Both parties agreed that Dickerson had not been denied visitation and that neither believed that Morris would deny her visitation in the future. Rather, Dickerson believed that she was entitled to more visitation than she was currently being allowed. However, because Dickerson has not proved that she had been denied visitation, she failed to prove the loss in relationship necessary to overcome the statutory presumption. Her petition is premature. Thus, we reverse the circuit court's order granting appellee visitation.

Finally, because Dickerson failed to prove a loss in relationship, we need not address Morris's other claims regarding Dickerson's capacity to give B.M. love, affection, and guidance or her ability to be cooperative with Morris if visitation is allowed.

Reversed.

VAUGHT, C.J., and HOOFMAN, J., agree.