2014 Ark. App. 166

**Kassandra Page HORTON, Appellant**

v.

**Rhonda Sue FREEMAN, Appellee.**

No. CV–13–952.

Court of Appeals of Arkansas.

March 12, 2014.

Rehearing Denied April 16, 2014.

Appeal from the Mississippi County Circuit Court, Osceola District [No. DR–2012–195], Victor L. Hill, Judge.

ROBIN F. WYNNE, Judge.

In this one-brief appeal, Kassandra Horton appeals from the circuit court's order awarding grandparent visitation to appellee Rhonda Freeman, the mother of the minor child's deceased father. She argues that (1) the trial court erred in awarding grandparent visitation over the objections of the parent; (2) even if the award of grandparent visitation is affirmed, granting appellee the same visitation as a non-custodial parent is excessive; and (3) the trial court "lacked subject matter or statutory jurisdiction" to make any determination concerning grandparent visitation because paternity had not been established by a court of competent jurisdiction. We affirm the award of grandparent visitation and reject the jurisdictional argument, but we reverse the amount of grandparent visitation and remand for the circuit court to reconsider the amount of visitation under the proper standards.

On October 26, 2012, appellee filed a petition for paternity and for grandparent visitation with D.F., born July 23, 2009.[1] In her response, appellant admitted that Dustin had acknowledged paternity of D.F. and that she had admitted under oath that Dustin was the biological father and received Social Security payments on behalf of D.F. A hearing was held on May 29, 2013. Appellee testified regarding her relationship with D.F. She stated that her son Dustin, appellant, and D.F. lived with her and her ex-husband at their home in Osceola from the end of September 2009 until they moved to Hot Springs in April 2010; they moved back in with her in June 2010 and stayed until December 2010. During the times that they lived with her, appellee cared for D.F. consistently. She stated that D.F. did not sleep upstairs with his parents because of the stairs, and she often cared for him when he awoke during the night or when his parents were out. During the day, appellee shared child-care responsibilities with appellant and Dustin. Appellee introduced numerous pictures of her and her family with D.F. She testified that appellant stopped letting her see D.F. in September 2012 after she and appellant got into an argument. Appellee described her frequent visits with D.F. after her son's death and testified that she loved D.F. and he loved her; that she had the capacity to give D.F. love, affection, and guidance; and that if awarded visitation she would be cooperative. She testified that she was taking the prescription drug Xanax three times a day, that she had gotten a DUI in September 2011, that she spent the night at the hospital on her son's birthday after his death because she took her medication and then drank four beers, and that she had paid a fine after being convicted of "laying hands" on her ex-husband; however, she testified that appellant had never raised any of these as concerns prior to cutting off her visits with D.F.

Appellee's son Justin testified to the close relationship between D.F. and his mother, as well as the rest of the family. He also testified that his brother and appellant lived at a house on Cherry Drive before moving to Hot Springs; he testified that they moved in with his mother when they returned to Osceola and lived with her six to nine months over different periods of time. Denise Ferguson, a close

---

1. D.F.'s father and appellee's son, Dustin C. Freeman, died on March 4, 2011. Appellee referred to her son as "Bugger" in her testimony.

friend of appellee, and Peggy Clark, appellee's sister, testified that appellant, Dustin, and D.F. lived with appellee during the times that appellee had testified to. Appellee's witnesses all echoed appellee's testimony that she and D.F. had a close, loving relationship prior to that relationship being cut off by appellant.

Appellant and her uncle, John Horton; her mother, April Lamb; and her cousin, Dana Herriman all testified that appellant and D.F. had never lived with appellee. Appellant testified that D.F. is Dustin's child and that she and Dustin broke up in June 2010. She stated that she would allow appellee back in D.F.'s life if she ever became stable again. She also testified regarding the reasons she did not think it was right for D.F. to be "constandy preached about his daddy."

In an order entered June 3, 2013, the court granted appellee grandparent visitation and awarded her "visitation with the minor child consistent with the visitation chart currently in use in the Second Judicial District." The court found that appellee had proved a significant and viable relationship with the child (crediting the testimony of appellee and her witnesses over that of appellant and her witnesses) and that it was in the child's best interest to have visitation with appellee. The court addressed the allegations by appellant that appellee's |₄judgment was questionable due to her use of a prescription drug, a 2011 conviction for DWI, a misdemeanor conviction for battering a former boyfriend, and joking that she smoked marijuana; the court found that, while "[t]hese are not good things, ... these instances of bad behavior would not, of themselves, be a bar to the grant of [appellee's] statutory right."

Several posttrial motions were filed in this case. On June 17, 2013, appellant filed a motion for new trial under Rule 59, rehearing/amendment of findings under Rule 52, or to rule on all pending claims and/or to enter a certification under Rule 54(b). Appellee responded. Appellant filed a supplemental motion, which included an emergency motion to suspend visitation on the grounds that the child had been in the custody of appellee's sister on a family vacation that appellee did not go on and that appellee had left the child in a vehicle unattended.

The court held a hearing on June 26, 2013, and entered an order on July 8, 2013. In the order, the court ruled on appellant's jurisdictional claim but expressly reserved the remaining issues for a future hearing.[2] Regarding appellant's claim that the court lacked jurisdiction because paternity had not been established prior to the filing of the petition for grandparent visitation, the court ruled that appellee did not have to prove paternity because appellant had conceded it in her pleadings and in her testimony: Appellant filed a notice of appeal on August 7, 2013, in which she abandoned any pending but unresolved claims.

## |₅I. *Award of Grandparent Visitation*

■ First, appellant argues that the circuit court erred in finding that appellee overcame the statutory presumption that her (appellant's) decision denying visitation was in the best interest of the child. She challenges both the court's significant-and-viable-relationship finding and the best-interest finding.

Arkansas's grandparent visitation statute, Arkansas Code Annotated section 9–13–103 (Repl.2009), provides in part:

**2.** We note that an order granting or denying visitation under section 9–13–103 is a final order for purposes of appeal. Ark.Code Ann. § 9–13–103(f)(4) (Repl.2009).

(c)(1) There is a rebuttable presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child.

(2) To rebut the presumption, the petitioner must prove by a preponderance of the evidence the following:

(A) The petitioner has established a significant and viable relationship with the child for whom he or she is requesting visitation; and

(B) Visitation with the petitioner is in the best interest of the child.

(d) To establish a significant and viable relationship with the child, the petitioner must prove by a preponderance of the evidence the following:

(1)(A) The child resided with the petitioner for at least six (6) consecutive months with or without the current custodian present;

(B) The petitioner was the caregiver to the child on a regular basis for at least six (6) consecutive months; or

(C) The petitioner had frequent or regular contact with the child for at least twelve (12) consecutive months; or

(2) Any other facts that establish that the loss of the relationship between the petitioner and the child is likely to harm the child.

(e) To establish that visitation with the petitioner is in the best interest of the child, the petitioner must prove by a preponderance of the evidence the following:

(1) The petitioner has the capacity to give the child love, affection, and guidance;

(2) The loss of the relationship between the petitioner and the child is likely to harm the child; and

(3) The petitioner is willing to cooperate with the custodian if visitation with the child is allowed.

■ We review domestic-relations proceedings, such as visitation requests, de novo on the record. *Bowen v. Bowen,* 2012 Ark. App. 403, 421 S.W.3d 339. In reviewing the circuit court's order, we give deference to the circuit court's findings and review those findings under the clearly erroneous standard, and we will not reverse unless we are left with a definite and firm conviction that a mistake has been made. *Id.* This deference is even greater in cases involving children, as a heavier burden is placed on the judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.* Further, when visitation is at issue, we will not reverse the circuit court's decision absent an abuse of discretion. *Id.*

Appellant disputes the finding that appellee had a significant, viable relationship with the child. Specifically, she asks this court to find her witnesses more credible than appellee's regarding the amount of time appellee and the child spent together. While appellant and her witnesses testified that she and D.F. never lived with appellee, appellee and her witnesses testified that after D.F. was born in July 2009, appellant, her son Dustin, and D.F. all lived with appellee at her home in Osceola from the end of September 2009 until April 2010. During that time, appellee spent significant time caring for D.F. and developed a strong bond with him. Later, appellant, Dustin, and D.F. lived with appellee from June 2010 until December 2010. This testimony, which the trial court expressly credited, establishes that D.F. lived with appellee for more than six consecutive months. See Ark.Code Ann. § 9–13–103(d)(1)(A).

■ Appellant also disputes the finding that visitation with appellee is in the

child's best interest. Again, she points to the testimony presented by herself and her witnesses and argues that she "has perfectly valid reasons for limiting grandparent visitation." Appellant asks this court to make a credibility determination that her witnesses should be believed over appellee's, and also seems to argue that appellee's taking prescription drugs and personal problems should bar a finding that it was in the child's best interest to have a relationship with his paternal grandmother. Furthermore, she contends that the only evidence that loss of a relationship with appellee would harm the child is appellee's own testimony. Because it is the circuit court's province to assess the credibility of the witnesses, not this court's, we affirm on this point. *See Bowen, supra.*

## II. *Amount of Visitation*

■ Next, appellant argues that, even if the award of grandparent visitation is affirmed, granting appellee the same visitation as a non-custodial parent is excessive. Appellant contends that the circuit court "abdicated any exercise of discretion in fashioning a schedule applicable to these parties" by "apply[ing] a blanket rule for parents adopted by the judicial circuit." At the hearing, appellee requested the standard visitation schedule that the circuit court uses, and asked that she have D.F. on the same weekends as her son Justin had his daughter so that the cousins could be together. The court granted her request without explanation.

■ The fixing of visitation rights is a matter that lies within the sound discretion of the circuit court. *Morris v. Dickerson,* 2012 Ark. App. 129, at 4, 388 S.W.3d 910, 912. Abuse of discretion is discretion applied thoughtlessly, without due consideration, or improvidently. *Hollingsworth v. Hollingsworth,* 2010 Ark. App. 101, at 1–2,

377 S.W.3d 313, 314. Here, we are not convinced that the circuit court exercised its discretion because it appears to have summarily awarded a grandparent the standard visitation schedule used by the judicial circuit for non-custodial parents. Therefore, we reverse and remand for the circuit court to determine what amount of visitation is reasonable under the circumstances.

## III. *Circuit Court's Jurisdiction*

■ Finally, appellant argues that the trial court "lacked subject matter or statutory jurisdiction" to make any determination concerning grandparent visitation because paternity had not been established by a court of competent jurisdiction. She concedes in her brief, as she did below, that appellee's deceased son was D.F.'s biological father and appellee is a paternal grandparent; however, she contends that Ark.Code Ann. § 9–13–103(b)(3)'s requirement that "paternity has been established by a court of competent jurisdiction" in order for an illegitimate child's paternal grandparent to petition for visitation rights means that the circuit court was without power to award visitation in this case. Appellant cites no case on point for this proposition. The circuit court addressed this argument in its July 8th order, ruling that because appellant had conceded paternity there was no need for appellee to prove it.

■ Subject-matter jurisdiction is a court's authority to hear and decide a particular type of case. *Tripcony v. Ark. Sch. for Deaf,* 2012 Ark. 188, at 4–5, 403 S.W.3d 559, 561. A court lacks subject-matter jurisdiction if it cannot hear a matter under any circumstances and is wholly incompetent to grant the relief sought. *Id.* Here, the circuit court had the authority to hear the petition for grandparent visitation. Without authority for the proposi-

tion that an order of paternity entered before the filing of a petition for grandparent visitation is required for the circuit court to acquire subject-matter jurisdiction, we conclude that the circuit court had subject-matter jurisdiction and therefore find no error.

Affirmed in part; reversed and remanded in part.

PITTMAN and BROWN, JJ., agree.